Earnest, Trav. Auditor, v. Sargent, Auditor, 20 N. M. 427.

[No. 1800, July 2, 1915.]

## EARNEST, State Traveling Auditor and Bank Examiner, v. SARGENT, State Auditor.

### SYLLABUS BY THE COURT.

1. The court will take judicial notice of the journal of the Senate, notwithstanding the fact that it is not on file in the office of the secretary of state by reason of his refusal to receive and file the same, where the chief clerk of the Senate produces the same and testifies that it is the Senate journal and is in the same form as when he signed the same.

P. 430

2. The two houses of the Legislature have the right and power to make their respective journals show that all of their business was transacted before the arrival of the moment of time for their adjournment, as fixed by the Constitution, and, at least in the absence of a gross and flagrant violation of the constitutional restriction as to the length of the session, evidence is inadmissible to contradict the journal.

P. 432

3. The fact that the certificates of the presiding officers and chief clerks of the respective houses showing the passage of a bill by a two-thirds yea and nay vote of each house, the objections of the Governor to the contrary notwithstanding, are not attached to the enrolled and engrossed bill, found on file in the office of the secretary of state, but are pinned to the original bill, also there on file, is held to be immaterial, for the reason the condition mentioned, being due to the carelessness of some clerk, either of the Senate or in the secretary's office, will not be allowed to defeat the legislative will, and the certificates will be held to apply and belong to the enrolled and engrossed bill, and for the reason that no such certificates are required by law to give effect to said bill; the only certificates required by law being the certificates of passage when the bill first goes to the Governor for his approval, which certificates are attached to the enrolled and engrossed bill in this case.

P. 433

4. Where the title of an act is "An act providing for the appointment of a state traveling auditor and prescribing his duties" (Laws 1915, c. 59), and said act (section 4) provides, among other things, that "the state traveling auditor shall have all the powers and shall perform all of the duties now imposed by law upon the traveling auditor and bank examiner, whose office was created under the laws of the territory of New Mexico, and the said office as it existed under the laws of the territory is hereby abolished, * * *" the provision abolishing the office of traveling auditor and bank examiner is held to be germane to the main subject and purpose of the act, and to be therefore within the scope of the title. The said act, being entirely inconsistent with the previous territorial legislation, is also held to repeal such territorial legislation by necessary implication, so that the old officer is no longer in office, nor is he entitled to the compensation sought for in this case.

P. 434

Original mandamus by Howell Earnest, as Traveling Auditor and Bank Examiner of the State of New Mexico, against William G. Sargent, State Auditor of the State of New Mexico. Alternative writ discharged.

J. H. Crist and E. C. Wade, Jr., both of Santa Fe, for relator.

Did House Bill No. 294 pass the Legislature within the constitutional time limit? The answer depends on two other questions, viz.: Did the session of the Legislature expire by constitutional limitation at 12 M. on Friday, the 12th day of March, and if it did, how will the court determine the fact, specifically alleged in the complaint and not denied in the answer, that the bill passed the Senate after 12:40 p. m. of that day, when the Senate no longer had any constitutional power to sit.

Whether a bill became a law in the manner prescribed by the Constitution is a judicial question, and arises

whenever an act is drawn in question, whether made an issue by the pleadings or not.

Portland Gold Mining Co. v. Duke, 191 Fed. 696.

The court has a right to resort to any source of information which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer, in exercising its judicial knowledge.

Gardner v. Collector, 6 Wall. 499; Jones v. U. S., 137 U. S. 202.

The title of the act does not constitutionally express the contents thereof.

State v. Fontenote, Ann. Cas. 1915A 79; Cooley's Const. Limitations, 211.

The act is not sufficient in terms to constitute an appropriation for payment of the officer's salary.

Sec. 30, Art. ——, State Const.

FRANK W. CLANCY, Attorney General, and HARRY S. BOWMAN, Assistant Attorney General, for respondent.

## OPINION OF THE COURT.

PARKER, J.—This is an original proceeding in this court in mandamus, wherein it is alleged that the relator is the duly appointed, qualified, and acting traveling auditor and bank examiner of the state of New Mexico; that the defendant is state auditor of the state of New Mexico; that on the 1st day of May the relator presented to the defendant, as such state auditor, his account in the sum of $250, which was then due him from the state for his compensation or salary as such traveling auditor and bank examiner for the month of April, 1915, with the demand that he give to relator a warrant on the treasury of the state for said sum; and that the defendant, as such state auditor, refused, and still refuses, to give relator a warrant on the state treasury for said amount, or any other amount.

An alternative writ was issued, and the defendant au-

swered. In his answer the defendant denies that the relator is the traveling auditor and bank examiner of the state of New Mexico, and bases his denial upon the alleged fact that during the last session of the Legislature of the state of New Mexico both houses of said Legislature passed a bill which was and is known as House Bill No. 294, one of the provisions of which bill is that the office of traveling auditor and bank examiner is abolished, such office being the same office of which the relator in the present case claims to be the incumbent; that after its passage the said bill was presented to the Governor for approval, and the Governor returned it to the House of Representatives, in which it originated, with his objections, which were entered at large upon the journal, and the said bill was thereafter approved by two-thirds of the members present and voting in each house of the Legislature, by yea and nay vote, entered upon its journal, which bill is now on file in the office of the secretary of state with all the other bills which became laws during said session of the Legislature, and is identified by the signatures of the presiding officers and clerks of both houses.

Upon the argument the relator offered to show by evidence aliunde the journal of the Senate that House Bill No. 294 was passed over the Governor's veto after 12 o'clock noon of the sixtieth day of the session. The argument therefrom was made that the action of the Senate in so passing said bill after the expiration of the 60-day period prescribed by the Constitution was illegal and void, and the conclusion was drawn that the office of traveling auditor and bank examiner of the state had not been abolished. Several legal propositions are involved.

[1] It appeared on the hearing that the chief clerk of the Senate, Mr. Isidoro Armijo, took to the office of the secretary of state some little time after the adjournment of the session a document which purported to be the journal of the Senate, and offered to file the same in the office of the secretary of state. The secretary of state refused to receive and file the same. Since that time, the chief clerk testified, it has been in his possession in a safe in the office of the state land commissioner. It therefore

appears that there is no Senate journal on file in the office of the secretary of state, the proper place for its filing and safe-keeping.

There is no argument between counsel as to the proposition that the court will take judicial notice of the journals of the houses of the Legislature. The controversy in this case, however, arises out of the fact that the alleged journal is not found in the proper custody and on file in the proper office. It is argued in behalf of relator that the filing of the journal in the office of the secretary of state makes the same a public document, and that thereupon, and by reason thereof, the court takes judicial notice of the same. The Attorney General, on the other hand, in behalf of the defendant, argues that the filing of the journal in the office of the secretary of state adds nothing whatever to its dignity as a public document; that it is a public document from day to day during the session of the Legislature, and continues to be such for all time; and that the filing of the same in the office of the secretary of state gives it no greater efficacy than it had before. No case is cited by counsel on either side touching the proposition, and we must decide the same according to the general principles of law relating to such matters. The rule of evidence in regard to ancient documents that they must come from the proper custody has no application in this case. In those cases the documents are allowed to prove themselves, because they are ancient documents and come from the proper custody. In this case this document depends upon no such principle for its evidentiary character. The document is identified by the officer under whose direction the same was prepared, and it is declared by him to be the Senate journal. The principle of judicial notice, it seems to us, is broad enough to compel us to inform ourselves from any authentic source as to what the Senate journal shows. If this case had arisen during the session of the Legislature, and before the time had arrived to file the journal with the secretary of state, we assume that no one would question the proposition that we should take judicial notice of the journal up to that time. Now that the secretary of state has re-

fused to receive and file the same, the situation is unchanged. We have taken the testimony of the chief clerk of the Senate, which is undisputed, and are satisfied therefrom that this journal is the Senate journal. We may therefore look to it for any fact therein contained which is material or germane to this investigation.

[2] As before seen, the relator offered to show by evidence that, as a matter of fact, House Bill No. 294 was passed after noon of the sixtieth day of the session of the Legislature. We have examined the journal, and find no evidence therein of any kind or character to corroborate this proposed proof, but, on the contrary, the journal shows that all the proceedings were concluded before the close of the sixtieth day of the session, including the passage of House Bill No. 294, by a two-thirds yea and nay vote, the objections of the Governor thereto notwithstanding.

Even if it be admitted, for the sake of argument, that House Bill No. 294 did not pass over the Governor's veto until after noon on the sixtieth day of the session, the consequences of allowing proof of that fact to contradict the journal would be so far-reaching and so disastrous as not to be countenanced or tolerated. It is a matter of common knowledge that Legislatures almost universally do continue their sessions beyond the time fixed for their adjournment. In the stress of business during the close of a session it is impossible for any legislative body to always conclude all of its affairs. A universal practice has grown up both · in the national and state Legislatures to make the record speak what is not the exact truth in all cases. This is necessary in order that the will of the Legislature shall not be overturned and defeated and the rights of the people embarrassed by a mere failure to conclude the important business of the Legislature within an arbitrary, set time. It is a matter of common information that Legislatures resort to subterfuges, and for the sake of regularity and form only often stop the clock shortly before the hour has arrived for adjournment, so that in form the adjournment actually takes place at the proper moment of time. Out of these considerations, and many others, it

has come to be recognized that a legislative body has the power and the right to determine for itself when the moment of time has arrived for adjournment, and it has the power to make its journal conform to what it determines to be that moment of time. The doctrine is sound, and must not be departed from. If the journal can be contradicted about matters of this kind, then no legislation passed on the last day of the session will be of any validity whatever. A controversy might arise in time as to whether the time for adjournment had arrived before the conclusion of the business of the session, and as many differences of opinion might arise as there are members of the houses. Watches and clocks would be the criterion, and one member might claim that the hour of 12 had arrived by his watch, and another member might claim that the hour of 12 had not arrived by his watch. Therefore, when the Legislature writes its journal, and states, as this journal states, that all of the business involved in this discussion had been completed before the moment of time for adjournment had arrived, the rule of law and the rule of common sense is that it shall not be contradicted by the evidence of witnesses. It may be that an exception to this rule might be founded upon a gross and flagrant violation of the constitutional restriction as to the length of the legislative session, but we have no such case before us here. No claim was made on the argument that House Bill No. 294 was passed later than shortly after 12:40 p. m. on the 12th day of March last. The argument is that the sixtieth day of the session expired at noon on March 12th. Therefore the charge made against the validity of this bill would be that it was passed something more than 40 minutes after the noon hour had arrived. This shows, even if true, that the Legislature was endeavoring to finish its business within a few minutes after 12 o'clock noon of March 12th, and shows no willful or fraudulent purpose on its part to unduly extend the session beyond the constitutional restriction.

[3] Upon the hearing the secretary of state produced from his office the original bill introduced in the house, and the enrolled and engrossed bill, together with the

certificate signed by the presiding officers of the two houses, and the chief clerks of each house, and certifying that the bill had been passed by each house by a yea and nay vote by two-thirds majority, the objections of the Governor thereto notwithstanding. This certificate was not attached to the enrolled bill, nor was it attached to the original bill, except pinned to the cover upon the original bill. Argument was made in behalf of relator that the enrolled bill was therefore not certified in proper form; there being no certificate attached thereto. This argument is faulty. The certificate which should have been, according to legislative practice, attached to the enrolled bill, and not the original bill, as introduced in the house, will be considered by the court as appertaining to and belonging to the enrolled bill. To hold otherwise would be to convict the Legislature of a foolish thing. The fact that the certificate mentioned is not attached to the enrolled and engrossed bill is the result of the carelessness of some clerk either of the senate or house, or in the secretary's office, and it would be preposterous to allow a mistake of this kind to interfere with the legislative will. The certificates were made and intended for the enrolled and engrossed bill, and they will be so considered. Even if it indubitably appeared that the certificate of the presiding officers of the two houses and the chief clerks of the same had never been intended by the Legislature to be attached and applied to the enrolled and engrossed bill, this fact is practically immaterial, because, having taken judicial notice of the journal, which shows the passage of the bill over the Governor's veto by both houses, no certificate would be required other than that required when the bill originally went to the Governor for his approval, which are present on this enrolled and engrossed bill.

[4] It is argued in behalf of the relator that the title of the act known as House Bill No. 294 is not broad enough to cover the subject-matter embraced in the act. The title of the act is:

"An act providing for the appointment of state traveling auditor and prescribing his duties." Laws 1915, c. 59.

In section 4 of the act there appears the following provision:

> "The state traveling auditor shall have all of the powers and shall perform all of the duties now imposed by law upon the traveling auditor and bank examiner, whose office was created under the laws of the territory of New Mexico, and the said office as it existed under the laws of the territory is hereby abolished. * * * "

The argument is made in behalf of the relator that, the title of the act being silent upon the subject of abolishing the office of traveling auditor and bank examiner, this part of the act is void, and that therefore the relator is still in office under the former territorial legislation. It is argued by the Attorney General that the title of the act is broad enough to include this provision; the provision being germane to the main subject and purpose of the act. With this position we are compelled to agree. We recently had occasion to examine this question in reference to another act in the case of State v. Ingalls, 18 N. M. 211, 135 Pac. 1177, and have no reason to depart from the reasoning in that case. It would lead to an absurd result to hold that, notwithstanding a new office was created by the act, and all of the powers and duties of the traveling auditor and bank examiner transferred to it, that still the traveling auditor and bank examiner might hold and occupy an office to which there were no longer attached any duties or powers. The abolishment of the office of traveling auditor and bank examiner is subsidiary to the main purpose of the bill, and the title of this act gives notice to any one of the fact that a new office is thereby created, whose duties must necessarily cover the same field belonging to the former territorial office.

Assuming, however, for the sake of argument alone, that the clause above quoted is not valid under the title of the act, the territorial legislation under which relator held his office must be held to be repealed by necessary implication. Aside from the provisions of section 5 of the act, which repeals all acts and parts of acts in conflict with the provisions of House Bill No. 294, there is a necessary

antagonism between the act and the former territorial legislation. It would convict the Legislature of a foolish and vain thing to transfer to a new office all the powers and duties of a former office, and leave the former one in existence without powers or duties. The state legislation is in absolute conflict with that of the territorial legislation, and of course the former legislation must be held to be repealed.

It is apparent from what has been said that there is no basis for the maintenance of this proceeding. The office of traveling auditor and bank examiner of the state had been abolished, and House Bill No. 294 had become a law before the relator in this case performed the services for which he seeks compensation or salary.

The alternative writ heretofore issued will be discharged; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.