[No. 2130.   Nov. 3, 1917.]

SMITH et al. v, LUCERO, Sec'y of State.

### SYLLABUS OF THE COURT.

Sections 12 and 20 of article 4, and section 1 of article 19, of the state Constitution, interpreted. It is held that the provisions of section 20 of article 4 authorizes and requires the enrolling and engrossing of the resolution proposing a constitutional amendment, the same as in the case of the ordinary bill or resolution. It is further held that where there is a conflict between the enrolled and engrossed resolution proposing a constitutional amendment and the legislative journal, in that the journal tends to show that the resolution failed to receive the number of votes réquired by the Constitution, the enrolled and engrossed resolution, properly authenticated, is to prevail over the journal.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action for injunction by G. C. Smith and others against Antonio Lucero, Secretary of State. Bill dismissed and plaintiffs appeal. Affirmed.

Frank W. Clancy, of Santa Fe, for appellants.

The doctrine of the Kelley-Marron Case, 21 N. M. 239 is not applicable here. The resolution proposing a constitutional amendment is governed by the article providing therefor, and not by procedure elsewhere provided.

Commonwealth v. Griest, 186 Pa. 387, 50 L. R. A. 586.

In proposing amendments to constitution theLegislature is not exercising its legislative power.

Warfield v. Vandiver, 4 Ann, Cas. 692.

Reference may be had to journal because there is no provision made for certification of constitutional proposals.

Kelley v. Marron, 21 N. M. 262.

70 Pac. 322 and Norris v. Cross, 105 Pac. 1010, upon which trial court based its decision are unsound.

Validity of legislative procedure in proposing amendments is a judicial question to be determined by courts.

Livermore v. Waite, 25, L. R. A. 213; State v. Cunningham, 15 L. R. A. 561; Crawford v. Gilcrist, 32 Ann. Cas. 1914 B. 917; Note, State v. Winnett, 10 L. R. A. (N. S.) 149; Ellingham v. Dye, 99 N. E. 1.

Charles A. Spiess, and S. B. Davis, Jr., both of E. Las Vegas, and E. R. Wright, of Santa Fe, for appellee.

People ex rel O'Reilly v. Mills, 70 Pac. 322 holds that the adoption of constitutional amendment is a legislative function and courts will not interfere therewith.

Kelly v. Marron, 21 N. M. 239, is decisive of this case.

If certification and filing of resiltuion is not conclusiye the entries on journal are conflicting and will not be held to show lack of proper majority.

M., K. & T. Ry. Co. v. Simons, 88 Pac. (Ks.) 551.

The doctrine of Kelly v. Marron, supra, is sound.

Sherman vs. Story, 30 Cal. 253; People vs. Burt, 43 Cal. 560; Evans vs. Browne, 30 Ind. 514; Koehler vs. Hill, 60 Iowa 543; Company vs. Richoux, 23 La. Ann. 743; Mayor vs. Hargood, 32 Md. 471; Railroad vs. Governor, 23 Mo. 353; Swann vs. Buck, 40 Miss. 268; State vs. Swift, 10 Nev, 176; Pangborn vs. Young 32, N. J., L. 29; People vs. Devlin, 33 N. Y. 269; Brodnax vs. Broom, 64 N. C. 244.

## OPINION OF THE COURT.

PARKER, J. This is an action brought to obtain an injunction against the secretary of state to restrain him from publishing in the newspapers, in accordance with the requirements of article 19 of the state Constitution, as a proposed amendment of sections 12 and 5, of article 6, of the Constitution, the matter contained in House Joint Resolution No. 19, which was introduced in the Third Legislature of the state. The ground for such injunction is that the said resolution was not adopted, as required by the Constitution, by a majority of the members elected to the state Senate. Section 1, of article 19 of the Constitution, provides that any amendment or amendments to the Constitution may be proposed in either house of the Legislature at any regular session thereof; and if a majority of all members elected to each of the two houses, voting separately, shall vote in favor thereof, such proposed amendment or amendments shall be entered on their respective journals with the yeas and nays thereon. The secretary of state is required to cause any amendment or amendments to be published in the manner pointed out in the article for a certain length of time prior to the election thereon.

The legislative journal shows the following:

"Mr. Sanchez moved that the joint resolution be now passed. Roll call was as follows: Ayes: [Naming 12 members.] Nays: [Naming 11 members.]"

Then appears the following:

"The result being in the affirmative, the president declared House Joint Resolution No. 19, to have passed the Senate.

"The joint resolution proposing an amendment to the Constitution of the state of New Mexico and having passed the House and Senate is copied into this journal as follows:"

Then follows a copy of the resolution which proposed an amendment to the Constitution, making some changes in the judicial districts of the state and providing for the election of judges therein.

On the day following the passage of the joint resolution in the Senate, the journal shows that the same was read in full in open Senate, signed by the president and the fact of such signing announced. This was in accordance with the procedural directions of section 20, of article 4, of the Constitution.

The court below found that the resolution was duly passed by the Legislature and that consequently the plaintiffs were not entitled to maintain their action. The bill was thereupon dismissed and the plaintiffs appealed.

In order to present a clear view of the question involved, the pertinent provisions of the Constitution are inserted as follows:

Article 4, § 12: "All sessions of each house shall be public. Each house shall keep a journal of its proceedings, and the yeas and nays on any question shall, at the request of one-fifth of the members present, be entered thereon. The original thereof shall be filed with the secretary of state at the close of the session, and shall be printed and published under his authority."

Article 4, § 20: "Immediately after the passage of any bill or resolution, it shall be enrolled and engrossed, and read publicly in full in each house, and thereupon shall be signed by the presiding officers of each house in open session, and the fact of such reading and signing shall be entered on the journal."

Article 19, § 1: "Any amendment or amendments to this Constitution, may be proposed in either house of the Legislature at any regular session thereof; and if a majority of all members elected to each of the two houses, voting separately shall vote in favor thereof, such proposed amendment or amendments shall be entered on their respective journals with the yeas and nays thereon."

Article 4 above mentioned is the legislative article of the Constitution. Article 19 is the constitutional amendment article.

The real controversy between counsel arises out of the

difference of opinion as to the proper construction of the foregoing provisions. It is argued by appellant that the journal shows that the resolution proposing the amendment never received the constitutional majority required, and that resort may be had to the journal for the evidence of that fact. The argument is founded upon two considerations, viz., that the provisions of section 20, of article 4, apply solely to ordinary legislative action; second, that the Constitution making no provision for the certification of the proposed constitutional amendment, as it does in the case of ordinary legislation, resort must be had to the legislative journal for the evidence of what was done, there being no other source of evidence on the subject.

In support of appellant's first proposition, counsel cite Commonwealth v. Griest, 196 Pa. 898, 46 Atl. 505, 50 L. R. A. 568, Hollingsworth v. Virginia, 3 Dall. (U. S.) 378, 1 L. Ed. 644, and Warfield v. Vandeveer, 101 Md. 78, 60 Atl, 538, 4 Ann. Cas. 692. In each of these cases the question was whether the proposal of the constitutional amendment was required to be submitted to the executive for approval, and in each of them it was held that it was not necessary or allowable. The conclusion in these cases was reached largely upon the construction of the terms used in the respective constitutions under consideration, and upon the consideration that the proposal of constitutional amendments was not legislative in character and was therefore not to be participated in by the executive.

In support of the second proposition, counsel rely upon the case of Earnest v. Sargent, 20 N. M. 427, 150 Pac. 1018. They argue that in this case, as in the Earnest-Sargent Case, there is no source of evidence as to the action taken by the Legislature except the journal. Therefore, it is argued, resort may, and in fact must, be had to the journal for such evidence, which shows, it is claimed, that the proposed amendment never received the vote of the required majority in the Senate.

Counsel for appellee rely upon the doctrine of the case of Kelley v. Marron, 21 N. M. 239, 153 Pac. 262, as controlling in the determination of this case. They argue that

the proposed amendment came into the Senate as a resolution, and as such it is governed by the provisions of section 20 of article 4, above set out. They quote many general definitions of the word "resoultion," showing the term to be broad enough to include the proposed amendment. They say that to hold that the provisions of section 20 of article 4, are inapplicable is to interpolate in the section language which is not there, and to construe it as though it read "any bill or resolution, except resolutions proposing amendments to the Constitution." They rely upon the general doctrine that the province of construction lies wholly within the domain of ambiguity, and that where there is no ambiguity there is no room for construction—citing Hamilton v. Rathbone, 175 U. S. 414, 20 Sup. Ct. 155, 44 L. Ed. 219, and other cases.

We do not regard the argument of the eminent counsel on either side of the case as entirely satisfactory or conclusive, and we will therefore take our own course in this discussion of the matter.

It is to be observed that proposed constitutional amendments are to be entered in the journal, together with the yea and nay vote thereon. This provision is special to such matters, and there is no such requirements in regard to any other legislative action. All bills and resolutions passed by the Legislature are to be enrolled and engrossed, publicly read and signed in open session, and the reading and signing thereof noted on the journal. This provision is general and refers to all action taken by the Legislature. The two articles are not so seperate in scope and subject-matter as to prevent the application to one of the general provisions in another. In one particular, at least, they are connected in terms, in that a proposed amendment, provided for in one article, is required to be entered in the journal, the keeping of which is provided for in the other article. Can it be said that the proposed constitutional amendment is to be left to its fate in the journal, prepared often, as it is recoguized to be, by incompetent men, and by men frequently insensible to their responsibilities, receiving no sanction of the legislative body except the perfunctory reading and approval of the journal, which

is often dispensed with, and to a journal which is often not actually written up until after the legislative body has adjourned, while the ordinary bill or resolution is to be enrolled and engrossed, publicly read and signed by the presiding officers in open session? To hold with the contention of appellants is to answer the inquiry in the affirmative. In that event, the only way a proposed constitutional amendment is to find· its way into the office of the secretary of state is at the close of the session of the Legislature and as a part of the journal. In this way the Legislature is left at the mercy of a clerk, who, it is sufficient to say, is not a member thereof and has none of the duties and responsibilities of such membership. Every consideration of certainty and safety requires the court to hold that the authentication of the proposed amendment be not left to the journal, but to the enrolled and engrossed resolution proposing the same, if it can be done without doing violence to the provisions of the Constitution or the rules of construction.

There appears, in some of the cases cited by appellant, argument that the action of the Legislature in regard to constitutional amendments is essentially not by bill or resolution but that it is merely a proposal. This argument was resorted to for the purpose of demonstrating that such proposal was not within the terms of the requirement that all bills or resolutions must be submitted to the executive for approval. We fail to appreciate the force of the argument appearing in these cases. It is true that an amendment is what is proposed, but the means of expressing the legislative will must be by bill or resolution, or some other means of like character. And if it be in the form of a proposal, it would be nevertheless, in substance, necessarily, a bill or resolution. This is the only way a deliberative body has of expressing its will. The thing done, so far as the Legislature is concerned is to pass a bill or resolution. The result is the proposal to the people of a constitutional amendment.

In this connection, it may be well to note that our Constitution is the only constitution in the United States, so far as our research has disclosed, which contains the pro-

visions of section 20, of article 4. Many of the constitutions provide for the reading of the bill or resolution by title, and the signing of the same by the presiding officers in open session. Under such a system we assume that it is the original bill or resolution that is signed by the presiding officers and which evidences the final action of the legislative body. This was the former practice in this jurisdiction under the territorial government. On the other hand, under the state government and the provisions of the Constitution, it is not the original bill or resolution which represents the final action taken by the legislative body, but it is the enrolled and engrossed copy of the original bill or resolution which represents the final action.

The original bill or resolution ceases to be of any force and effect, and the enrolled and engrossed copy is sent out to the world as a complete statement of what the Legislature has done. This is the authentic evidence of the legislative action. It was the evident intention of the constitutional convention in inserting this section to provide that in all cases the Legislature should put out to the world a finished product, and that all questions of procedure in the enactment of any bill or resolution should be left behind and not open to inquiry. It evidently designed that what was to be done by the Legislature should be done in open session, under the eye of the whole body, and that all questions about the procedure or contents of the action should be settled once for all by the enrolled and engrossed bill or resolution. That the provision is a wise one is readily made to appear. In this way no question as to whether the bill or resolution has been amended and, if so, as to the contents of the amendment, can arise. The bill with all its amendments is enrolled and engrossed into one single consecutive document, about the contents of which as representing the legislative action there can be no question. The Legislature in this way is made to say in the single document what action it has taken. It is made to say by this requirement that the bill or resolution has passed the houses and the houses themselves so certify in open session by the signatures of the presiding officers. This section declares a policy in regard to the authenti-

cation and certification of all legislative acts, and the
terms employed are general and comprehensive and in-
clude every form of the legislative action.

It is argued in some of the cases, as has been heretofore
pointed out, that the action taken is not legislative action,
and that, therefore, procedural provisions in regard to
legislative action should not be held to apply. The argu-
ment is not convincing. The provision, as has been here-
tofore pointed out, is general and is not confined to the
ordinary legislative action. It includes all procedure by
the Legislature and therefore includes the proposal of con-
stitutional amendments. Even if it be admitted that the
action taken by the Legislature is not strictly legsilative
in character, but is special and in pursuance to a specially
delegated power, that fact is not controlling. Whatever the
nature of the power exercised is, it is in any event a power
exercised by the Legislature as such.

We are aware that in California, Iowa, Nevada, Mis-
souri and Montana a different conclusion is reached. In
those states and others, it is held that the journal is the
source of evidence as to what was done in the proposal of
constitutional amendments, and that the ordinary rule that
resort cannot be had to the journal to impeach the enrolled
and authenticated act of the Legislature has no applica-
tion. In those states, however, they have no such provision
as we have in regard to the enrolling and engrossing
of all bills and resolutions and have therefore no such de-
clared policy as to the evidence of legislative action. Cases
from those states are collected in the note to Palatine In-
surance Co. v. Northern Pac. Ry. Co. 34 Mont. 268, 85
Pac. 1032, 9 Ann, Cas. 579, 587.

We therefore hold that under the provisions of section
20, of article 4, of the Constitution, the Legislature is au-
thorized and required to enroll and engross and have pub-
licly read and signed in open session a resolution propos-
ing an amendment to the Constitution.

Having arrived at this conclusion, we are still confronted
with the question as to the testimonial preference which
is to be given to two apparently opposing proofs. On the
one hand, we have the journal which shows that the pro-

posal of the amendment received only 12 votes, one less than th erequired number. On the other hand, we have the enrolled and engrossed resolution proposing the amendment duly authenticated and on file in the office of the secretary of state. The question is which source of evidence is to control. Both acts by the Legislature are authorized and required by the provisions of the articles above referred to. One antagonizes the other, although it is argued by counsel for appellee the journal taken as a whole shows that the proposal was passed by the required majority. The argument is based upon the considerations that notwithstanding the yea and nay vote as recorded in the journal shows that only 12 members voted in the affirmative, while 13 were required, nevertheless the president of the Senate in open session declared that the resolution passed, and that on the following day the enrolled and engrossed resolution was read in full in open Senate, signed by the president, and the fact of such signing announced. It is argued that no presumption can be indulged that the presiding officer of the Senate would make the statement that the resolution had passed the Senate if it had not received the necessary vote; or that he would authenticate it in open session if it had not been properly passed; or that the members who opposed its passage would sit silent in their seats without protest against these untrue announcements, if they were in fact untrue. It is further argued that this court must assume that the members of the Legislature knew that it required 13 votes to propose amendments. Counsel cite M., K. & T. Ry. Co. v. Simons, 75 Kan. 130, 88 Pac. 551. In that case the journal showed an insufficient number of votes to pass the bill. The journal showed that the announcement was made that the constitutional majority having voted in favor of the passage of the bill, the bill passed and the title was agreed to. The Kansas court held that in view of the contradictory character of the statements contained in the journal itself, it would not be relied upon as evidence to overthrow the enrolled and engrossed bill on file with the secretary.

It will be unnecessary in view of our conclusion to de-

termine the exact effect which should be given to a journal entry like the one involved in this case, filled as it is with uncertainty and doubt. It will be sufficient to say that in view of the policy established by the constitutional convention as appears in the articles set out above, the enrolled and engrossed resolution is to be given cotrolling force in the determination of this matter. If there is reason to accept the enrolled and engrossed bill duly authenticated by the signatures of the presiding officers of the two houses as the best and highest evidence of the passage of an act by the Legislature, excluding resort to the journal to overthrow it, there is certainly as much reason, if not more, to accept the same evidence to the exclusion of the journal entries in regard to a resolution proposing a constitutional amendment. The Legislature in open session have declared that they have proposed to the people of this state the amendment to the Constitution, and have so certified according to the forms required by the Constitution, and in the interest of certainty and safety, the testimonial preference as to the evidence of the fact is to be awarded in favor of the enrolled and engrossed resolution.

In this connection, it is to be noted that the Attorney General in his brief attacks the decision in the Kelley-Marron Case as going too far and beyond the facts in that case. He argues for the rule that where the journal fails to show a compliance with the procedural requirements, the enrolled and engrossed bill or resolution must prevail; but where the journal affirmatively shows a departure from constitutional requirements, the enrolled and engrossed bill or resolution is to be overthrown. Many strong cases are cited, but, in view of the doctrine of the Kelley-Marron Case and of the considerations hereinbefore expressed, we cannot follow them. ·

For the reasons stated, the judgment of the court below will be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.