**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ben DIAZ, Defendant-Appellant.**

**No. 74–1177.**

United States Court of Appeals,
Ninth Circuit.

June 24, 1974.

Harold A. Donegan, Jr. (argued), Scottsdale, Ariz., for defendant-appellant.

Gerald S. Frank, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before MERRILL and KOELSCH, Circuit Judges, and SWEIGERT,* District Judge.

OPINION

MERRILL, Circuit Judge:

Appellant was charged in 1973 with appropriating "objects of antiquity situated on lands owned and controlled by the Government of the United States without the permission of the Secretary of Interior," contrary to 16 U.S.C. § 433.[1]

---

* Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. That section provides:
   "Any person who shall appropriate, excavate, injure, or destroy any historic or prehistoric ruin or monument, or any ob-

The items appropriated were face masks found in a cave on the San Carlos Indian Reservation. They were identified by a San Carlos medicine man as having been made in 1969 or 1970 by another medicine man personally known to him. A professor of anthropology at the University of Arizona testified as an expert on the religious systems of the Western Apache in the State of Arizona. He testified that artifacts such as those appropriated by appellant were used by the Apache Indians in religious ceremonies and that after the conclusion of ceremonies the artifacts traditionally were deposited in remote places on the reservation for religious reasons; that the artifacts are never allowed off the reservation and that they are considered sacred and may not be handled by anyone except the medicine man once they are stored in a cave. He further testified that in anthropological terms "object of antiquity" could include something that was made just yesterday if related to religious or social traditions of long standing. In his opinion the artifacts in the instant case were antiquities despite the fact that they were no more than three or four years old.

We have no doubt as to the wisdom of the legislative judgment (made close to seventy years ago and reinforced by experiences of the present in the despoliation of public lands) that public interest in and respect for the culture and heritage of native Americans requires protection of their sacred places, past and present, against commercial plundering.

Protection, however, can involve resort to terms that, absent legislative definition, can have different meanings to different people. One must be able to know, with reasonable certainty, when he has happened on an area forbidden to his pick and shovel and what objects he must leave as he has found them.

Nowhere here do we find any definition of such terms as "ruin" or "monument" (whether historic or prehistoric) or "object of antiquity." The statute does not limit itself to Indian reservations or to Indian relics. Hobbyists who explore the desert and its ghost towns for arrowheads and antique bottles could arguably find themselves within the Act's proscriptions. Counsel on neither side was able to cite an instance prior to this in which conviction under the statute was sought by the United States.

In Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L. Ed. 322 (1926), the Court, in discussing the due process requirement of legislative specificity, stated:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

In Grayned v. City of Rockford, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), it was stated:

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. [Footnote omitted]

ject of antiquity, situated on lands owned or controlled by the Government of the United States, without the permission of the Secretary of the Department of the Government having jurisdiction over the lands on which said antiquities are situat-

ed, shall, upon conviction, be fined in a sum of not more than $500 or be imprisoned for a period of not more than ninety days, or shall suffer both fine and imprisonment, in the discretion of the court."

Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

Here there was no notice whatsoever given by the statute that the word "antiquity" can have reference not only to the age of an object but also to the use for which the object was made and to which it was put, subjects not likely to be of common knowledge.

In our judgment the statute, by use of undefined terms of uncommon usage, is fatally vague in violation of the due process clause of the Constitution.

Judgment reversed.