633 P.2d 700

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Clarence "Frank" TURLEY,
Defendant-Appellee.**

**No. 4354.**

Court of Appeals of New Mexico.

Nov. 25, 1980.

Jeff Bingaman, Atty. Gen., Jill Z. Cooper, Deputy Atty. Gen., Santa Fe, for plaintiff-appellant.

Leslie Rakestraw, Rio Rancho, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was charged with unlawfully excavating, with the use of mechanical earth moving equipment, an archaeological site for the purpose of collecting or removing objects of antiquity; the site being located on private land. The criminal information specifically charged that the "objects" were of ancient, native American culture and that the site was an Indian ruin. The information also charged that the excavation was by use of mechanical earth moving equipment—a front-end loader. It is not disputed that the excavation was on private land, that the excavation was of an archaeological site, and that the purpose of the excavation was to remove objects of antiquity. The unlawfulness charged was that the excavating was done without a permit. It is stipulated that defendant did not obtain a permit; he did not apply for a

permit. The trial court dismissed the information; the State appealed. We discuss: (1) the statutory meaning; (2) ascertaining legislative intent; and (3) the claim that the statute is void for vagueness.

*Statutory Meaning*

(a) Statutory Scheme

The Cultural Properties Act, §§ 18–6–1 through 18–6–17, N.M.S.A.1978, contains a legislatively-declared purpose. Section 18–6–2 states, as a part of that declaration, "that the public has an interest in the preservation of all antiquities, historic and prehistoric ruins, sites, structures, objects and similar places and things for their scientific and historical information and value . . . ." Section 18–6–2 states the purpose of the Act is "to provide for the preservation, protection and enhancement of structures, sites and objects of historical significance within the state . . . ." This New Mexico statute complements federal legislation. See 16 U.S.C.A. §§ 461, 469, 470, 470aa. No claim is made that the New Mexico Act had an improper purpose or that the Legislature lacked the power to enact this legislation. See *City of Sante Fe v. Gamble-Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964); compare *National Advertising Co. v. State, Etc.*, 91 N.M. 191, 571 P.2d 1194 (1977); *Santa Fe Commun. Sch. v. New Mexico State Bd. of Ed.*, 85 N.M. 783, 518 P.2d 272 (1974).

The Cultural Properties Act regulates excavation of archaeological sites on both state and private lands. By § 18–6–9, the state reserves the exclusive right of field archaeology on sites owned or controlled by the state, and makes it a misdemeanor "for any person or his agent" to excavate any object of historical or archaeological value without a valid permit. By § 18–6–11, the excavation of archaeological sites on private land is regulated. A comparison of §§ 18–6–9 and 18–6–11 shows that excavation of sites on private land is less extensively regulated than similar excavations on public land.

(b) Private Land Excavation

This case involves excavation on private land. The pertinent provisions of § 18–6–11 state:

A. It is unlawful for any person to excavate with the use of mechanical earth moving equipment an archaeological site for the purpose of collecting or removing objects of antiquity when such archaeological site is located on private land in this state, unless such person has first obtained a permit issued pursuant to the provisions of this section for such excavation. As used in this section an "archaeological site" means a location where there exists material evidence of the past life and culture of human beings in this state and includes the sites of burial and habitats of human beings: Indian, Spanish, Mexican and other early inhabitants of this state.

\* \* \* \* \* \*

D. Nothing in this section shall be deemed to limit or prohibit the use of the land on which the archaeological site is located by the owner of such land, or to require such owner to obtain a permit for personal excavation on his own land, provided that no transfer of ownership is made with the intent of excavating archaeological sites as prohibited in this section.

Defendant is not the owner of the land being excavated. The trial court dismissed the information on the basis that defendant was not required to have a permit under § 18–6–11(A) because his excavation was with the consent of the landowner.

(c) The Landowner's Consent

In ruling that defendant had the consent of the landowner the trial court referred to an agreement between defendant and the landowner. The State asserts that this Court cannot consider this contract because it was never offered and admitted into evidence in the trial court. This claim disregards the stipulation between the parties, part of which was that "the defendant and the property owner entered into a written agreement attached hereto." Another part of the stipulation also referred to the "attached" contract. The contention that the

contract was not before the trial court is frivolous.

■ Pursuant to R.Crim.App.Proc. 209(a), the trial court's order designated that "all" proceedings be included in the appellate transcript. The contract was not included; this Court requested that the contract be forwarded to the Court of Appeals and this was done. Because the contract was not included in the transcript filed with this Court, the State contends we may not consider it. We need not consider the consequences to the State's appeal of the State's failure to have the contract included in the transcript; the contract is before us pursuant to this Court's request and we had authority to make such a request. See *State v. Garcia*, 92 N.M 730, 594 P.2d 1186 (Ct.App.1978).

(d) The Trial Court's Ruling

It is not necessary to set forth the provisions of the contract. A permissible inference from the provisions of the contract is that defendant was the agent of the landowner in performing the excavations which were the basis for the criminal charge. The trial court drew this inference. It ruled that defendant was not subject to prosecution for excavating with mechanical earth moving equipment without a permit, that "defendant, acting as an agent for the landowner is exempt from prosecution" under § 18–6–11(D).

(e) The Language of § 18–6–11(D)

■ Section 18–6–11(D) does not contain the word "agent". This absence is to be compared with § 18–6–9(B), which makes it a misdemeanor "for any person or his agent" to excavate on state land without a valid permit. The absence of a reference to "agent" in § 18–6–11(D) is also to be compared with § 18–6–11(A) which makes excavations without a permit unlawful "for any person." The exemption from the permit requirement in § 18–6–11(D) provides that the landowner is not required to obtain a permit "for personal excavation on his own land". One rule of construction is that a statute is to be read as a whole so that each provision is considered in relation to every other part of the statute. *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). Considering the relationship of the above provisions, § 18–6–11(D) does not exempt an agent of the owner from the permit required by § 18–6–11(A).

(f) Owner as Including the Owner's Agent

■ Disregarding the differences in statutory language discussed in paragraph (e), defendant asserts that the word "owner", at common law, included the owner's agent and contends that the word "owner" in § 18–6–11(D) also includes the owner's agent. This argument overlooks the express provisions of the statute; the owner is not required to obtain a permit for his *personal* excavations. The common meaning of "personal", which we apply, is "done in person without the intervention of another ... relating to oneself". Webster's Third New International Dictionary (1966). This statutory requirement of "personal" excavation cannot be reconciled with the contention that "owner" includes "agent", and makes the asserted common-law rule inapplicable. *Southern Union Gas Company v. City of Artesia*, 81 N.M. 654, 472 P.2d 368 (1970).

(g) Absurd Result

Defendant asserts that if "owner" is not construed to include the owner's agent, the result is absurd because contrary to the language in § 18–6–11(D) that the use of the land by the owner is neither limited nor prohibited. This contention disregards § 18–6–10(A) which states: "It is the declared intent of the legislature that field archeology on privately owned lands should be discouraged except in accordance with the provisions and spirit of the Cultural Properties Act ...." This provision is consistent with the purpose stated in § 18–6–2 —to preserve and protect sites of historical significance. Permitting a landowner to conduct personal excavations on his own land, but requiring the owner's agent to obtain a permit, is not absurd; rather, this is consistent with § 18–6–2 and 18–6–10(A).

(h) Strict Construction

Section 18–6–11(E) provides penalties for violating § 18–6–11. Because the statute is penal, defendant asserts that any ambiguity should be strictly construed against the state. The meaning of "owner" in § 18–6–11(D) is not ambiguous; the strict construction rule is not applicable.

*Ascertaining Legislative Intent*

The discussion in paragraph (e), (f), (g) and (h) above answers the arguments on appeal as to the meaning of § 18–6–11(D). The contentions discussed in those paragraphs were not the basis for the trial court's decision; that basis is not discussed in the briefs.

The trial court remarked:

[L]et the record show that the court is ruling as a matter of law that based upon the testimony of Senator Ike Smalley, sponsor of the bill which ended up as Statute 18, 6–11, stated that he was instrumental in adding Section D to the original bill excepting the landowner or its agents from obtaining a permit to use mechanical machinery; with that testimony this court has ruled that the defendant is an agent.

The order dismissing the information is consistent with the oral remarks of the trial court, above quoted. The order states that Senator Smalley was examined at the court's request "in an effort to determine the intent of the Legislature in enacting Section 18–6–11(D) . . . ." Having heard the testimony of Senator Smalley, the trial court ruled that defendant was exempt from prosecution because defendant's excavation was with the consent of the landowner.

We are not concerned with whether the trial court properly understood the "intent" testimony of Senator Smalley. The portion of the testimony which we consider is that "nothing materialized" from his pre-introduction discussions with an unidentified proponent of the legislation, that Senator Smalley thought the bill had been introduced in the Legislature by Senator Montoya, that the bill was considered in two committees of which he was a member, and amendments were made to the bill in one or both committees.

No committee report was in evidence; there is no testimony as to statements made by committee members at the time the measure was being considered by the committee. There is no testimony as to statements made during debate by the legislators concerning the measure. There is no testimony as to an explanation of the bill, to the Legislature, by a sponsor of the measure. Thus, we do not decide whether any of such evidence would be admissible to show legislative intent. See 2A Sutherland Statutory Construction (4th ed. 1973) §§ 48.06, 48.07, 48.08, 48.10, 48.13, 48.14, 48.15.

In this case the "intent" testimony of Senator Smalley was the testimony of a member of legislative committees which considered the measure and a member of the Legislature which enacted the measure. A difficulty with admitting this type of evidence is that it permits an evidentiary contest, between legislators, as to what was intended. See *Friends of Mammoth v. Board of Super. of Mono Cty.*, 8 Cal.3d 247, 104 Cal.Rptr. 761, 502 P.2d 1049 (1972) which states: "That two legislators report contradictory legislative intent fortifies judicial reticence to rely on statements made by individual members of the Legislature as an expression of the intent of the entire body . . . . Other extrinsic aids to determine legislative intent are generally more persuasive." *Sutherland*, supra, § 48.16 states:

[I]n construing a statute the courts refuse to consider testimony as to the intent of the legislature embodied therein by members of the legislature which enacted it. The courts evidently wish to avoid having to pass upon the credibility of legislators and ex-legislators.

*Haynes v. Caporal*, 571 P.2d 430 (Okl. 1977) states:

At trial, legislative intent . . . was sought to be established through the testimony of an individual senator and house member at the time of . . . [the bill's]

passage. This court is not bound, and need not consider such evidence. Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote.

■ The propriety of admitting a legislator's testimony on the question of legislative intent has not been previously decided in New Mexico. See *Runco Acidizing & Frac. Co., Inc. v. Bureau of Revenue*, 87 N.M. 146, 530 P.2d 410 (Ct.App.1974). We hold that a legislator's testimony, either as committee member or legislative member, generally is not competent evidence as to the intent of the legislative body enacting a measure. *Southern Railway Company v. A. O. Smith Corp.*, 134 Ga.App. 219, 213 S.E.2d 903 (1975); *Financial Indemnity Co. v. Cargile*, 32 Ohio Misc. 103, 288 N.E.2d 861 (1972); *Levy v. State Bd. of Examiners, Etc.*, 553 S.W.2d 909 (Tenn.1977).

The trial court erred in basing its decision on the testimony of Senator Smalley.

*Void for Vagueness*

■ An alternative claim raised by defendant, in an effort to sustain the trial court's decision, is that he cannot be prosecuted for a violation of § 18–6–11(A) because that section is void for vagueness. This contention is directed to the sentence in § 18–6–11(A) which reads:

As used in this section an "archaeological site" means a location where there exists material evidence of the past life and culture of human beings in this state and includes the sites of burial and habitats of human beings: Indian, Spanish, Mexican and other early inhabitants of this state.

Defendant states: "The terms 'archaeological site', 'material evidence' and 'past life and culture' are not defined and are too vague to be susceptible of identification." A penal statute "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" violates due process. *Bokum Resources v. N.M. Water Quality Cont.*, 93 N.M. 546, 603 P.2d 285

(1979). The vagueness doctrine is based on notice. *State v. Najera*, 89 N.M. 522, 554 P.2d 983 (Ct.App.1976).

Defendant's contention was not raised in the trial court; we consider it here, for the first time, because the contention attacks the facial validity of the permit requirement of § 18–6–11(A) and, therefore, raises the issue of whether a crime has been committed. *State v. Vickery*, 85 N.M. 389, 512 P.2d 962 (Ct.App.1973).

Defendant relies on *United States v. Diaz*, 499 F.2d 113 (9th Cir.1974). The federal statute involved provided criminal penalties for appropriating any historic or prehistoric ruin or monument or any object of antiquity situated on federal land without the appropriate permission. Diaz was charged with appropriating objects of antiquity. The objects were face masks made in 1969 or 1970 and found in a cave on the San Carlos Indian Reservation. The masks were used in Indian religious ceremonies and deposited on remote places of the reservation for religious reasons. Noting that the statute did not define "ruin," "monument," or "object of antiquity," *Diaz* held: "Here there was no notice whatsoever given by the statute that the word 'antiquity' can have reference not only to the age of an object but also to the use for which the object was made and to which it was put . . . ."

*Diaz* does not aid defendant. "Archaeological site" is defined in § 18–6–11(A), and that definition does not cover "every cemetery, garbage dump, library, antique store, and housing development" as defendant contends.

The issue as to vagueness does not involve the lack of definition but whether the words, in that definition, "material evidence" and "past life and culture", fail to give notice as to the meaning of "archaeological site". In answering this question we consider the statute as a whole. *State v. Najera, supra*. In so considering the statute, we do not approach it from a lawyer's inability to understand the statutory wording, but from the ability of a person of

common intelligence to understand the words used. The following are taken from Webster's Third New International Dictionary (1966):

Material—"SYN PHYSICAL, CORPO-REAL, PHENOMENAL, SENSIBLE, OBJECTIVE: MATERIAL describes whatever is formed of tangible matter and may be used in opposition to *spiritual, ideal, intangible*".

Evidence—"something that furnishes or tends to furnish proof".

Past—"gone by: AGO".

Life—"animate being".

Culture—"the total pattern of human behavior and its products".

With these common meanings, a person of common intelligence does not have to guess at the meaning of "archaeological site" defined in § 18–6–11(A). *State v. McHorse*, 85 N.M. 753, 517 P.2d 75 (Ct.App. 1973); *State v. Orzen*, 83 N.M. 458, 493 P.2d 768 (Ct.App.1972). The definition of "archaeological site" is not void for vagueness.

The order dismissing the criminal information is reversed. Upon remand, the cause is to be reinstated upon the trial docket.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

ANDREWS, J., specially concurs.

ANDREWS, Judge (specially concurring).

Except for the discussion on "Ascertaining Legislative Intent," I concur in the majority opinion.

New Mexico courts have consistently held that the enrolled and engrossed bill is "conclusive and unimpeachable." *Dillon v. King*, 87 N.M. 79, 529 P.2d 745 (1974); *Clary v. Denman Drilling Co.*, 58 N.M. 723, 276 P.2d 499 (1954); *Thompson v. Saunders*, 52 N.M. 1, 189 P.2d 87 (1947); *State ex rel. Clancy v. Hall, State Treasurer*, 23 N.M. 422, 168 P. 715 (1917); *Smith et al. v. Lucero, Sec'y of State*, 23 N.M. 411, 168 P. 709 (1917); *Kelley v. Marron, State Treasurer*, 21 N.M. 239, 153 P. 262 (1915); *Earnest, Trav. Auditor v. Sargent, Auditor*, 20 N.M.

427, 150 P. 1018 (1915). Only in *Dillon v. King, supra*, did the court articulate an exception to the rule when it stated that the conclusive legal presumption would not attach when the "Legislature had ceased to be a legislative body by operation of the Constitution and was, therefore, without jurisdiction or authority to transact business or perform any lawmaking function." 87 N.M. at 85, 529 P.2d 745. No issue of this nature is present in the instant case.

The majority is aware of this rule, but considers it inapplicable because all cases previously decided deal with either the content of what the Legislature enacted or the mechanics of the enactment. In my view, such fact is immaterial. The reason the issue is one of first impression is that the rule is clear. The policy behind the presumption is the crucial issue, and is applicable regardless of the nature of the attack. There is nothing to be gained from a discussion of the issue.