Leona KESTER, Appellant,

v.

DISAN ENGINEERING CORP., an Oklahoma Corporation, Appellee.

No. 51022.

Court of Appeals of Oklahoma, Division No. 2.

Jan. 30, 1979.

Released for Publication by Order of Court of Appeals Feb. 22, 1979.

---

5. This was the second such charge. He was charged with D.W.I. August 4, 1969.

David H. Sanders, Sanders, McElroy & Carpenter, Tulsa, for appellant.

J. Duke Logan, Logan, Lowry & Johnston, Vinita, for appellee.

BACON, Presiding Judge.

This appeal involves a suit by a landlord for forcible entry and detainer of a building in Nowata, Oklahoma.

On December 17, 1963 Disan Engineering Corp. [Disan], an Oklahoma corporation, through its president, Bill Brown, leased the building from Vinita Mathis. The lease was a three-year written lease and expired by its own terms on November 30, 1966. The parties failed to agree on another written lease when the previous lease expired, but orally agreed that Disan could continue to occupy the premises by paying $87.50 per month. Disan remained in the building for the next 10 years and no other lease agreement was ever discussed.

The record shows conflicting testimony between Brown and Mathis as to the payment of rent during those last 10 years. Mathis testified that Brown was usually late in paying and oftentimes she would not be paid until she "dunned" Brown. Mathis further testified the lease was a month-to-month lease and not a quarterly lease. Brown testified that the rent was not always paid on time because Mathis was sometimes out of town. Brown further testified that Disan, the last year, had paid the

rent three months at a time, which Mathis said was never in advance but always after Disan was three months in arrears. Mathis testified, in fact, that Disan was two months behind in its rent when Mathis sold the property to Leona Kester, appellant herein, on March 2, 1977.

On March 3, 1977, Kester gave notice to Disan to quit the premises on or before April 5, 1977. Disan refused to vacate the building and Kester filed a forcible entry and detainer action against Disan.

Disan answered by general denial and further alleged it occupied the premises under an oral annual lease that did not expire until November 30, 1977.

The cause proceeded to trial, resulting in the trial court finding that Disan had "a valid quarterly lease" and had until June 5, 1977 to vacate the premises. Both parties initiated an appeal but Disan later dismissed its appeal. Only Kester's appeal remains.

Kester's first proposition reads:

"Whenever a written lease, for one or more years, expires and the tenant continues to occupy the premises, the tenant is a tenant at will and is subject to termination as a tenant at will."

Under this proposition, Kester takes the position that when the original written lease expired and Disan held over, Disan became a tenant at will. Kester argues that a tenant at will is only entitled to 30 days' notice and she gave notice on March 3, 1977 to vacate April 5, 1977, therefore, she says the trial court erred in finding (a) a quarterly lease existed, and (b) the termination date was June 5, 1977.

Disan counters by now concurring in, and attempting to, uphold the trial court's judgment in finding a quarterly lease existed, running from December 1 to February 28, then from March 1 to May 31. And, argues Disan, since notice was given on March 3, 1977 and "that quarter" would not end until the last day of May, the trial court correctly refused to order vacation of the premises prior to the last day of May, 1977. Disan does concede that the trial court gave "five 'free' days" from June 1 to June 5 to vacate the premises.

So, to this point, the posture of the case is that Kester contends Disan was a tenant at will, while the trial court, with Disan agreeing, urges that Disan was a quarterly tenant.

After a close review of the record and law, we conclude that Disan was neither a tenant at will nor a quarterly tenant, but a tenant from month-to-month.

■ The reason we do not agree with Kester that Disan was a tenant at will is because Kester's argument assumes Disan was a tenant at will due to the fact that Disan held over after the original written lease expired in 1966. Such an argument overlooks the undisputed fact that a separate oral lease was entered into after the original written lease had expired. With an oral lease in existence, a tenancy at will could not exist.

■ The reason we find the lease is not a quarterly lease is because the record simply does not support such a conclusion. The only evidence in the record to support such a conclusion is the self-serving testimony of Brown, the president of Disan. Brown's testimony, at best, is speculative and shows he was not sure what type of tenancy existed. Further, evidence of his unsureness is the fact that he first took the position that Disan had an oral annual lease, but later changed his position to ultimately conclude that it was a quarterly tenancy. For example, Brown testified:

"Q. I will direct your attention to the month of November, 1966 and ask you what happened when that lease expired.

"A. Actually I cannot definitely tell you what happened. I can tell you what I felt that we did to the best of my memory. I don't remember every detail.

"Attorney: Objection. The witness says he doesn't know and what he feels is incompetent and irrelevant.

"The Court: Sustained."

Brown went on to testify that the parties agreed that the old lease would be renewed on an annual basis with the rent paid on a

semiannual basis. He testified that the rent was paid whenever Mathis would call and ask for the rent. Then, Brown testified:

"Q. Would you pay in advance or would you pay in arrears?

"A. I honestly don't know. Part of the time I knew it definitely was in arrears because it was whenever she would call."

Later, Brown testified that the rent was paid for the last year on a quarterly basis. Yet, Mathis testified, and Brown did not deny, that Brown had paid for January and February of 1977 after the sale to Kester. If Brown had been paying quarterly, and that quarter was December of 1976, January and February of 1977, why would Brown be paying for January and February only? No checks or evidence of payment was offered into evidence by either party.

The above, as indicated earlier herein, is the only evidence in the record from which the trial court could have found a quarterly lease existed.

Kester testified that it was her understanding that when she bought the property Disan was a tenant paying $87.50 per month.

Mathis, the prior owner, was positive in her testimony. She testified that when the written lease expired in December 1966, Brown told her that he did not want a new written lease. She said she then asked for $100 per month and they agreed on $87.50 per month. Then, she adamantly denied an oral *annual* lease. When asked if she had any conversations with Brown regarding the rental after the December 1966 oral agreement, she said the only conversations were about getting her money from Brown and that she had to "dun" him for it. She explained that Brown paid her for January

and February of 1977, after she sold the property in March because Disan was behind on rent for those two months, and had been behind previously up to four months. Brown did not rebut this testimony nor deny it on rebuttal. For these reasons we find Disan was a tenant from month-to-month, with the monthly pay period commencing on the first of the month.

The problem in the present case, we think, is in determining when Disan must vacate the premises. That is, assuming Disan was a tenant at will, or a tenant from month-to-month, or a quarterly tenant, 30 days' notice will terminate the tenancy.[1] However, the problem arises as to 30 days' notice from what—the end of the term, the end of the month, or 30 days after the notice is given. In the present case, Kester gave notice after the first of the month, to-wit: March 3, 1977 to vacate April 5, 1977. The question then is, does Disan vacate on April 5, 1977 or midnight the last day of April? We find it is the latter time.

Many practicing lawyers would assume that the law in Oklahoma is clear that a month-to-month tenancy terminates at the end of the month when 30 days' notice was given to vacate in the middle of the month. Such is not so clear, however, in Oklahoma. No cases were called to our attention, nor could we find any cases which are clear on the matter.[2]

Although a tenancy at will is terminated under the same statute as month-to-month tenancies and quarterly tenancies, the tenancies are different. Because of the very nature of the different tenancies, different termination dates apply. In a tenancy at will, the tenancy can be terminated at the will of either party with 30 days' notice being given. For example, notice can be

1. Title 41 O.S.1971 § 4 reads: "Thirty days' notice in writing is necessary to be given by either party before he can terminate a tenancy at will, or from one period to another, of three months or less; but where in any case rent is reserved, payable at intervals of less than thirty days, the length of notice need not be greater than such interval between the days of payment."

2. Probably the reason most lawyers assumed the law was clear is because at least some form books mention until the issue is litigated it is safer to terminate at the end of the month. As a result, most lawyers have done so for many years, assuming that is the law. Vol. 1 Vernons-Oklahoma Methods of Practice § 309 (1965).

given on the 15th of the month and the tenant must vacate in 30 days, even if it is not the end of the month. *Stephenson v. O'Keefe*, 195 Okl. 28, 154 P.2d 757 (1945). In a quarterly tenancy [or any periodic tenancy for that matter], once the quarter starts the tenant is entitled to remain during the entire quarter but must vacate at the end of the quarter if 30 days before the end of the quarter notice to vacate is given. Title 41 O.S.1971 § 3 reads as follows:

"Tenant holds from period to another, when.—When rent is reserved, payable at intervals of three months or less, *the tenant shall be deemed to hold from one period to another*, equal to the intervals between the days of payment, unless there is an express contract to the contrary." (emphasis added)

■ While it has not been decided in Oklahoma, we find a month-to-month tenancy is to be treated as a tenancy for a calendar-month period and in order to terminate the tenancy, 30 days' notice prior to the end of any given month must be given. In other words, when a month starts, the tenancy lasts for the remainder of the period of that month, and if 30 days' notice of termination is given by either party, 30 days or more prior to the end of that month, the tenancy terminates at the end of the month. If, for example, notice is given on the third of March the 30 days could not elapse without starting April and, therefore, the tenancy would terminate at midnight, the last day in April.

In the present case, the trial court held the tenancy terminated on June 5, 1977. Such holding was error. Disan had received, on March 3, 1977, notice to vacate on April 5, 1977. However, since 30 days could not pass from March 3, 1977 without going into April, we hold Disan had until midnight of the last day of April to vacate the premises.

Kester's second proposition is answered in the above discussion. Kester's last and third proposition reads:

"A plaintiff is entitled to recover in ejectment when she proves her title, present right of possession, and wrongful possession of the defendant."

The issues raised in this proposition are moot because the trial court did not hold, nor is the issue properly raised, that Kester was not entitled to recover, but only *when* she was entitled to take possession.

The case is reversed and remanded to the trial court with direction to enter judgment according to the views expressed herein. Judgment on the supersedeas bond is granted and the amount is to be determined upon hearing by the trial court.

BRIGHTMIRE and NEPTUNE, JJ., concur.