630 P.2d 753

(The Way It Was, Inc.) T.W.I.W., INC.,
Plaintiff-Appellee,

v.

Steven J. RHUDY, Defendant-Appellant.

No. 13194.

Supreme Court of New Mexico.

June 29, 1981.

Santiago R. Chavez, Taos, for defendant-appellant.

Robert S. Skinner, Raton, for plaintiff-appellee.

## OPINION

FEDERICI, Justice.

Suit was brought in the District Court of Colfax County by appellee, The Way It Was, Inc. (T.W.I.W.) for unlawful detainer and nonpayment of rent and gas utility expenses on a rental unit located in Eagle Nest, New Mexico. The court found for T.W.I.W. in the amount of $1,148.72, plus costs, for back rent and a utility bill. Appellant (Rhudy) appeals. We affirm in part and reverse in part.

The premises were rented to Rhudy in August of 1979 under an oral month-to-month lease. The parties agree that rental was $175 per month. They disagree as to whether T.W.I.W. was to supply Rhudy with a heater in the rental unit. They also disagree as to whether Rhudy was to pay the gas utility bill. Finally, they disagree as to whether any of several notices to quit from T.W.I.W. to Rhudy were effective. The issues we discuss on appeal are:

I. Whether T.W.I.W. was required to provide reasonable heat for the premises;

II. Whether any of the notices to quit from T.W.I.W. to Rhudy were effective;

III. Whether there is substantial evidence to support the trial court's finding and conclusion that Rhudy owed T.W.I.W. $273.72 for gas; and

IV. Whether the trial court exercised independent discretion in preparing its findings and conclusions.

I.

Rhudy contends that the implied warranty of habitability is in effect in this State and he had a right to abate the rent because T.W.I.W. did not supply reasonable heat for the rental unit.

This Court held in *Barham v. Baca*, 80 N.M. 502, 458 P.2d 228 (1969), that there is no implied warranty of habitability in New Mexico. However, the Legislature enacted the Uniform Owner-Resident Relations Act, by 1975 N.M. Laws, ch. 38, §§ 1–54 (§§ 47–8–1 to 47–8–51, N.M.S.A.1978), which encompasses the issues presented on appeal. The section applicable to Rhudy's complaint of lack of heat is Section 47–8–20. That section provides:

A. The owner shall:

(1) substantially comply with requirements of the applicable minimum housing codes materially affecting health and safety;

(2) make repairs and do whatever is necessary to put and keep the premises in a safe condition as provided by applicable law, and rules and regulations as provided in Section 23 [47–8–23 NMSA 1978] of the Uniform Owner-Resident Relations Act;

(3) keep common areas of the premises in a safe condition;

(4) maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, air conditioning and and other facilities and appliances, including elevators, if any, supplied or required to be supplied by him;

(5) provide and maintain appropriate receptacles and conveniences for the removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal from the appropriate receptacle; and

(6) supply running water and a reasonable amount of hot water at all times and reasonable heat except where the building that includes the

dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the resident and supplied by a direct public utility connection.

B. If there exists a minimum housing code applicable to the premises, the owner's maximum duty under this section shall be determined by Paragraph (1) of Subsection A of this section. The obligations imposed by this section are not intended to change existing tort law in the state.

Under Subsection (B), if there exists a minimum housing code, the owner must at least substantially comply with it under Subsection (A)(1). We have not been directed to any applicable housing code by either of the parties, though it was stated at trial that there was no housing code in Eagle Nest.

While there may be no local housing code, we are aware of a state building code, adopted by the Construction Industries Division, which sets "minimum standards to safeguard . . . health [and] property . . . by regulating and controlling the . . . use and occupancy, . . . and maintenance of all buildings and structures within this jurisdiction. . . ." Uniform Building Code (U.B.C.) § 102 (1979 ed.). Section 47–8–3(C) defines "codes" within the Act as including building codes.

■ This Court may take judicial notice of agency rules and regulations. *See Eastern Navajo Ind., Inc. v. Bureau of Revenue*, 89 N.M. 369, 552 P.2d 805 (1976), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 810 (1977). We need not determine whether this is such a situation since there was not a sufficient development of the facts in the trial court to determine the applicability of the U.B.C. We therefore remand this question to the trial court to determine whether any housing codes or building codes apply to the premises involved here. If any code does apply, T.W. I.W. is required to substantially comply with it for purposes of the Uniform Owner-Resident Relations Act.

If no housing code or building code applies to the premises, T.W.I.W.'s obligations to Rhudy are set forth in Subsections 47–8–20(A)(2) through (6). Subsections (2) through (5) require the owner to provide certain minimum conditions in the dwelling. Subsection (6) requires the owner to "supply . . . reasonable heat *except where the building that includes the dwelling unit is not required by law to be equipped for that purpose.*" (Emphasis added.)

The underlined language above may be reasonably interpreted to mean that unless there is a law requiring the owner to supply reasonable heat, the owner need not supply it. On the other hand, it may mean that the owner is required to provide reasonable heat unless there is some law specifically exempting him from providing it. Under the first construction it appears the burden of demonstrating a law requiring reasonable heat is upon the resident, while under the second construction, the burden of showing a law exempting the dwelling from the general requirement of reasonable heat is upon the owner.

■ The statute is ambiguous and we must resort to rules of statutory construction. We start with the proposition that a statute should be interpreted to mean what the Legislature intended it to mean and to accomplish the ends it sought to accomplish. *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). In this case, the statute is part of an Act encompassing several statutes. Legislative intent is determined by looking to the Act as a whole. *Arnold v. State*, 94 N.M. 381, 610 P.2d 1210 (1980). The Legislature has expressed its intent in this Act. Section 47–8–2 states:

The purpose of the Uniform Owner-Resident Relations Act [47–8–1 to 47–8–51 NMSA 1978] is to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of owner and resident, and to encourage the owners and the residents *to maintain and improve the*

*quality of housing in New Mexico.* (Emphasis added.)

State law prior to enactment of this Act did not require owners to provide those items listed in Section 47–8–20. *See Barham v. Baca, supra.* Section 47–8–20 lists some of the "improvements" the Legislature required, including providing reasonable heat.

The Act is remedial and in derogation of the common law. It clearly modifies the common law concerning certain standards of quality which must be maintained in rental housing. Its application must be liberally construed. *Albuquerque Hilton Inn v. Haley,* 90 N.M. 510, 565 P.2d 1027 (1977). We hold that the Legislature intended to require owners to provide reasonable heat unless they could show some specific law exempting them from the requirement.

We are further persuaded that this is the proper interpretation of Section 47–8–20(A)(6), because the alternative interpretation renders Subsection (6) mere surplusage.

■ Subsections 47–8–20(A)(1) and (B) require owners to comply with housing and building codes. Subsections 47–8–20(A)(2) through (6) remain as minimum standards if there is no applicable code. It does not make sense to read Subsection (A)(6) as not requiring reasonable heat unless there is a law requiring it. The only law which would require heat, other than this Act, is a housing or building code. If a housing or building code applies, we would never get to Subsection (A)(6) because Subsection (A)(1) would apply. This would make Subsection (A)(6) mere surplusage. Statutes must be construed so that no part of the statute is rendered surplusage, if possible. *Stang v. Hertz Corporation,* 81 N.M. 69, 463 P.2d 45 (Ct.App.1969), *aff'd.,* 81 N.M. 348, 467 P.2d 14 (1970).

■ For these reasons, we construe Subsection 47–8–20(A)(6) as placing the burden upon the owner to show that a law exists which exempts him from providing reasonable heat for the resident. Since the trial court did not impose this burden upon the owner, the owner did not have an opportunity to present evidence on this issue. We reverse and remand to the trial court on this issue so that evidence can be taken upon which to decide whether reasonable heat was required in this case, and whether it was provided.

II.

■ In deciding whether a notice to quit is effective, we must first establish the periodic rental dates. The trial court made the following finding: "On and prior to November 4, 1979, [Rhudy] occupied as a residence premises owned by [T.W.I.W.] located in Eagle Nest, New Mexico, on a month-to-month tenancy." This finding is sufficiently clear for us to conclude that the trial court found that the periodic rental date commenced on the fourth day of each month. We have reviewed the record and this finding is supported by substantial evidence.

■ Appellant contends that none of the notices to quit were effective because they were not given at least thirty days prior to the periodic rental date as required by Section 47–8–37(B), which states:

B. The owner or the resident may terminate a month-to-month residency by a written notice given to the other at least thirty days prior to the periodic rental date specified in the notice.

The first notice appellee sent appellant was a letter dated October 22, 1979. Appellant contends that unless a notice is given at the beginning of the rental period, it is ineffective, and the only remedy is to give new notice. This is a matter of first impression in New Mexico. Other jurisdictions have held that if a notice for the termination of a tenancy is for any period shorter than the monthly period, it is ineffective. *See* Annot., 86 A.L.R. 1346 (1933). However, when addressing the question of whether the notice is effective to terminate the tenancy upon the expiration of the following month, many jurisdictions are in apparent agreement that it is. *Id. See also* 50 Am.Jur.2d *Landlord and Tenant* § 1211 (1970) and cases cited therein.

In *Kester v. Disan Engineering Corp.,* 591 P.2d 344, 348 (Okl.App.1979), the court ad-

dressed a factual situation similar to the one here. There, the tenancy period commenced on the first day of each month. The court said:

> If ... notice is given on the third of March the 30 days could not elapse without starting April and, therefore, the tenancy would terminate at midnight, the last day in April.

This rule is logical since such notice provides the tenant with information sufficient to inform him that the landlord wishes him to quit the premises, and the only question is how soon that must be done. We note that the applicable statute, set out above, requires notice to be "*at least* thirty days prior to the periodic rental date." (Emphasis added.) We hold that a notice to quit which is ineffective because it does not give the month-to-month tenant the requisite thirty days prior to the periodic rental date is nonetheless effective for the next ensuing rental date.

Appellant argues that the October 22 notice was ineffective because it did not sufficiently notify him that he must terminate the tenancy, as required by Section 47–8–37.

■ To be effective, notice must be sufficiently definite to inform the tenant of the landlord's desire that the tenant vacate the premises. *Lund v. Ozanne*, 13 N.M. 293, 84 P. 710 (1906).

The notice here advised Mrs. Rhudy that "it would be the best for all concerned if you would vacate the property .... In the event you do not deem it possible to move at the present time, you are now advised that your rent will be raised to $612.00 per month beginning November 1, 1979."

■ Where a notice to quit is coupled with an option to the tenant to remain at an increased rental, it is insufficient to terminate the tenancy. *Flanagan v. Lazerine*, 175 Mo.App. 188, 157 S.W. 824 (1913). *See* 51(C) C.J.S. *Landlord & Tenant* § 150(4) (1968).

■ This notice was not sufficiently definite to inform the tenants of the landlord's desire that they vacate, because it was equivocal. They could have construed the notice to mean that they could remain at an increased rental. Therefore, it was not effective notice. *Spencer v. Faulkner*, 65 Misc.2d 298, 317 N.Y.S.2d 374 (Civ.Ct.N.Y. 1971). We need not consider whether appellee was entitled to the increased rental, since this issue was not before the trial court.

■ The second notice to quit was delivered to Rhudy on November 3, 1979. It stated: "To comply with legal requirements, this is your official notice to vacate the T.W.I.W. property immediately for the following reasons: ...." This notice was unequivocal. Though it did not specify a proper date of termination, it was nonetheless effective for the reasons discussed above. The tenancy was terminated on midnight, December 3, 1979. Rhudy abated the rent for the month of November, which he was entitled to do under Section 47–8–29, if T.W.I.W. failed to perform its obligations, as required by Section 47–8–20. The abatement must be reasonable. There is substantial evidence that sufficient notice was given to allow Rhudy to abate the rent. On remand, if the trial court finds that Rhudy is entitled to abate the rent for the month of November, it must then determine whether the amount Rhudy paid, under the circumstances, was reasonable for that month. This amount should be the fair market value of the premises without heat for that month.

After midnight on December 3, 1979, the rental agreement was terminated.

Under Section 47–8–37(C),

> [i]f the resident remains in possession without the owner's consent after expiration of the term of the rental agreement or its termination, the owner may bring an action for possession and if the resident's holdover is willful and not in good faith the owner, in addition, may recover the damages sustained by him and reasonable attorney's fees.

The trial court here must determine whether Rhudy's holdover was willful and not in good faith, and if so, the date upon which it became so. T.W.I.W.'s damages and right to attorney fees will accrue from that date.

In addition, the owner is entitled to rent during the holdover period. § 47–8–35. Since there was no rental agreement after December 3, 1979, Rhudy is required to pay the "fair rental value" of the premises as they existed during these months under Section 47–8–15. "Fair rental value" is defined in Section 47–8–3. The trial court must determine this value for the months Rhudy was in possession without a rental agreement. For all practical purposes, we see no difference in the computation of this amount and in determining the amount of rent Rhudy must pay after abatement. However, the amount may fluctuate from month to month, since a lack of reasonable heat may reduce the fair rental value more in some months than others.

The trial court is reversed on this issue and directed to take additional evidence where necessary to set damages and rental amounts following the above guidelines.

### III.

Rhudy next argues that there is no substantial evidence to support the trial court's finding of an agreement by him to pay the gas utility bill. The evidence concerning this is conflicting. There is evidence that the agreement required Rhudy to pay the gas bill. Other evidence contradicts this. There is some evidence that an initial gas meter reading was never taken. There is also evidence that there had been no other tenant in the apartment, so what showed on the meter was solely Rhudy's gas reading. We set forth the elements of the substantial evidence test in *Toltec Intern. Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980). There we said that substantial evidence means sufficient relevant evidence which a reasonable mind might accept as adequate to support a conclusion. We also stated that on appeal, all disputed facts are resolved in favor of the successful party, with all evidence and inferences to the contrary disregarded. Finally, although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence. *See also Duke City Lumber Company, Inc. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975).

Here, there was substantial evidence to support the judgment of the trial court.

### IV.

Finally, Rhudy contends that the trial court adopted the findings of fact and conclusions of law requested by T.W.I.W., thereby failing to exercise its independent judgment and prepare its own decision. However, in two instances, the court added to the requested conclusions of T.W.I.W. One of T.W.I.W.'s requested conclusions required the trial judge to determine the amount due for the gas utility bill, which he did. We do not think that these facts are sufficient to find that the trial judge failed to exercise independent discretion. *See State, Etc. v. Rio Rancho Estates, Inc.*, 96 N.M. 560, 624 P.2d 502 (1981).

We reverse and remand to the trial court on Issues I and II above and affirm on Issues III and IV.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE and RIORDAN, JJ., concur.