656 P.2d 872

Donald E. CLARK and Betty J. Clark, Plaintiffs-Appellees and Cross-Appellants,

v.

Mark K. SIDERIS, Director, State Park and Recreation Division, New Mexico Natural Resources Department, William S. Huey, Secretary, NM Natural Resources Department, State of New Mexico Natural Resources Department and the State of New Mexico, Defendants-Appellants and Cross-Appellees.

No. 13868.

Supreme Court of New Mexico.

Dec. 20, 1982.

Rehearing Denied Jan. 7, 1983.

Jeff Bingaman, Atty. Gen., R. Michael Barlow, Asst. Atty. Gen., Santa Fe, for defendants-appellants and cross-appellees.

Fred M. Standley, Robert Suzenski, Santa Fe, for plaintiffs-appellees and cross-appellants.

## OPINION

PAYNE, Chief Justice.

This appeal involves a dispute over rights and obligations under a concession agreement between the plaintiff (Clark) and the defendant (Sideris), the Director of the State Parks and Recreation Division. The concession agreement covered facilities, including cabins, a lodge, and a marina, at the Elephant Butte Lake and Caballo Lake State parks. The trial court found that the State breached the agreement and awarded damages to Clark. Sideris appeals. We affirm in part and reverse in part.

Clark purchased concession rights and certain property from Johnston, the prior concessionaire, on October 20, 1976. Johnston had discussed the condition of the concession with a State official who told him

that if an appropriation was obtained from the Legislature, the State would put in a new marina and rehabilitate the lodge. Johnston later testified that this discussion "wasn't a commitment. We just talked about what the State Park would do if they get the money." Johnston passed this information on to Clark, although his exact statements are unknown. Johnston's representation was one of the bases upon which Clark relied in entering the sales agreement.

The sales agreement was subject to the State's approval of the transfer of the concession. Clark contacted the Park and Recreation Commission himself. At least one discussion occurred with the same official to whom Johnston had spoken. Clark testified that "[t]he conversation at that time concerned the needed and planned improvements at that concession, provided money was appropriated." Essentially, the same items were discussed at this time that were discussed with Johnston.

Subsequently, Clark and the State entered a concession or license agreement, which provided that Clark, as licensee, would maintain the premises. However, he was not to make any alterations, additions, or improvements without the State's permission, "excepting only ordinary maintenance, repairs, and painting." The State was also responsible for maintenance of specified items. Any obligation of the State requiring the expenditure of money was to be "subject to the availability of appropriation therefor."

At the time Clark purchased Johnston's interest, the premises were in poor condition. Clark claims that the state employees represented that they would seek and obtain an appropriation of $300,000 to improve the facilities. The appropriation was obtained, but only $156,000 was used to improve Clark's facilities; the rest was used to improve other facilities at the state park.

During renovation of certain cabins by the State, furnishings provided by Clark were damaged. Clark remodeled the lodge on his own initiative when a State employee indicated there were no funds to do the remodeling. Several cabins and the marina facility were unusable, and the State failed to provide timely repairs and replacement. Clark sought and recovered damages for the furnishings, the money spent on the lodge, the lost profits from not having cabins and a marina, and interest lost on money he invested in the facilities. Sideris appeals from this judgment. Clark cross-appeals, claiming that the trial court erred in not awarding Clark $144,000 to make up for the amount of the appropriation not spent on his concession.

### I.

The first point raised by Sideris is that the trial court erred in finding an implied warranty and covenant of fitness and suitability.

The trial court made the following findings:

11. That the said concession agreement contained an express warranty and covenant on the part of the Defendants and the State to repair and maintain the real and personal property and improvements let and demised to the Plaintiffs for the specific purpose and use as set forth above and in said concession agreement.

12. That the said concession agreement was entered into by the parties for a public use and purpose.

13. That there existed an implied warranty and covenant on the part of the Defendants and the State that the personal property, real property and improvements let and demised to Plaintiffs under the concession agreement would be and remain fit and suitable for the particular and specific purpose and use intended and contemplated as set forth above and in the concession agreement, at the inception of and throughout the term of the concession agreement.

14. That there further existed a warranty and covenant of quiet enjoyment and beneficial use and a warranty and covenant of habitability on the part of the Defendants and the State to Plaintiffs and certain third parties.

■ In *T.W.I.W., Inc. v. Rhudy,* 96 N.M. 354, 630 P.2d 753 (1981), this Court noted that there is no implied warranty of habitability in New Mexico, except as provided by statute. No such statute applies to this case. Also, the concession agreement contains an integration clause specifying that there are no warranties "not set forth or incorporated by reference in this document." Therefore, the trial court erred in finding an implied warranty and any liability on the part of the State for damages must be based only on the express warranty found by the court.

## II.

Sideris also asserts that the trial court's findings on the representation to Clark were based either on evidence under the parole evidence rule or on no evidence at all. The trial court made the following findings:

17. That the very inducement and basis for the signing of the concession agreement by the Plaintiffs were the representations, stipulations and promises by the Defendants and the State of an appropriation and expenditure of at least $300,000.00 to be made forthwith to the property let and demised to the Plaintiffs under the concession agreement for the purposes and uses thereby intended, provided that a legislative appropriation to make such expenditure possible became law.

18. That the concession agreement, itself, contains an apparent and patent ambiguity in its reference to legislative appropriations, requiring resort to parol, oral and extrinsic evidence to show the intent and agreement of the parties regarding legislative appropriations and expenditures to be made for the benefit of the Plaintiffs.

19. That without a binding commitment on the part of the Defendants and the State to expeditiously obtain an appropriation of at least $300,000.00 and to expend such monies without delay under the concession agreement, there would be no consideration for the concession agree-ment and no mutuality of obligation, and the concession agreement would otherwise be an illusory contract and unenforceable.

20. That the Defendants and the State sought and obtained an appropriation of $300,000.00 in order to meet their commitments to the Plaintiffs and their obligations under the concession agreement to the Plaintiffs, and thereby obtained such appropriation from the legislature for this specific purpose, and upon which request of the Defendants and the State the legislative appropriation was made in such amount for this specific object and purpose.

21. That on numerous occasions subsequent to the execution of the concession agreement, the Defendants and the State promised and obligated the State to obtain such an appropriation and to expend the monies thereby obtained under the concession agreement.

22. That the appropriation was obtained in the amount of $300,000.00 as aforesaid, but only the amount of $156,-000.00 more or less, was expended under the aforesaid concession agreement.

### A.

The parol evidence rule is a source of considerable confusion. Legal scholars and judges alike continue to express differing views as to its application. *See, e.g., Doyle v. Northrop Corp.,* 455 F.Supp. 1318 (D.N.J. 1978) (discussion of conflicting views of Professors Williston and Corbin); *Traudt v. Nebraska Public Power Dist.,* 197 Neb. 765, 251 N.W.2d 148 (1977) (majority and dissenting opinions). Because, this case presents a difficult situation, we proceed to closely analyze the trial court's findings as set forth *supra* in light of the case law, then discuss the effect of the Restatement (Second) of Contracts.

### B.

Finding 18 relates to the use of parol evidence to resolve an ambiguity.

We have previously stated that "[a] lease is subject to the basic rules of contract

construction. It must be read as a whole to effectuate the intent of the parties. We will not look beyond the four corners of the document unless the lease is ambiguous." *Acquisto v. Joe R. Hahn Enterprises, Inc.,* 95 N.M. 193, 195, 619 P.2d 1237, 1239 (1980). In the *Acquisto* case, the Court held that since the lease was "complete, plain and unambiguous, parol evidence [could] not be introduced to vary the terms of the agreement." *Id.*

■ The provision in the concession agreement which the trial court found ambiguous reads as follows:

25. AVAILABILITY OF APPROPRIATIONS. It is understood and agreed that any obligation of the Licensor and/or the State hereunder requiring or involving the expenditure of money, shall be subject to the availability of appropriation therefor.

We do not agree that this provision is ambiguous on its face. It merely places a condition on the State's obligation to spend more money under the agreement. The provision is ambiguous only after considering the parol evidence; however, parol evidence may not be used for the purpose of rendering an otherwise clear contract provision ambiguous.

### C.

Finding 17 relates to an exception to the parol evidence rule where the oral promise was an inducement to enter a contract. The import of this finding is unclear. There is no indication that Clark is relying on a promissory estoppel theory. Instead, Clark refers to such cases as *Bell v. Lammon,* 51 N.M. 113, 179 P.2d 757 (1947), and *Alford v. Rowell,* 44 N.M. 392, 103 P.2d 119 (1940). These cases indicate that the reason for the exception is to allow a party to show fraud. In *Alford, supra* at 397, 103 P.2d at 122, the Court stated:

If a parol contemporaneous agreement be the inducing cause of the written contract, or forms a part of the consideration therefor, and it appears the writing was executed on the faith of the parol agreement or representation, extrinsic evidence is admissible. In such cases, the real basis for its admission is to show fraud.

■ Clark is not attempting to show fraud but rather breach of contract. Assuming, *arguendo,* that the oral promises could be introduced to show that Clark relied on them in entering the concession agreement, the purpose for such evidence could only be to show fraud by the State. Evidence introduced on a theory of inducement is not evidence of a contract, the *breach* of which entitles Clark to damages.

There are other uncertainties related to the legal significance of this finding. The evidence indicates that the representations regarding appropriations and expenditures was first made to Johnston. There is no evidence that these representations were intended to influence Clark. There is no finding as to the reasonableness of Clark's reliance on these representations. The timing of any representations made to Clark by the State is unclear. Although the court found the representations to be the inducement of the signing of the concession agreement, it made no finding regarding Clark's separate, prior contract with Johnston to acquire the concession. The latter contract makes no reference to any promised State expenditures. However, Clark obligated himself to buy the concession. The court's finding disregards any inducement resulting from this separate contractual obligation. These uncertainties undermine the legal effect of the finding, which, at most, could support only a claim of fraud, not of breach of contract.

### D.

■ Finding 19 states that without a binding commitment on the State to spend $300,000 without delay, there would be no consideration for the concession agreement and no mutuality of obligation. On the contrary, the extensive terms of the concession agreement establish rights and obligations for both parties. This finding is not supported by substantial evidence.

### E.

Finding 21 relates to promises made by the State subsequent to the execution of the concession agreement. There is no finding of consideration for such promises so as to make them enforceable, and we fail to see the relevance of this finding.

### F.

Findings 20 and 22 refer to the facts that the State did obtain an appropriation of $300,000 and then spent only $156,000 under the concession agreement. These findings, which are supported by substantial evidence, do no more than show that the State had available $300,000 to perform its obligations under the concession agreement. Paragraph 25 made the State's obligations under the concession agreement "subject to the availability of appropriation therefor." Nothing in the agreement requires the State to spend any particular amount of money. There is no exception to the parol evidence rule that would allow a contract which would contradict the concession agreement on this point. Therefore, we are left with the agreement and the fact that the State had available $300,000 with which to perform its duties under the agreement. As discussed *infra,* to any extent the State breached its duties while having funds available, the State is liable for damages. However, these findings do not permit an award of damages for the mere failure to spend.

### G.

We are prompted by counsels' briefs and the meandering language of the case law to discuss the application of the Restatement (Second) of Contracts to this case.

 Section 209 discusses integrated agreements and states that the court should determine at the outset whether there is an integrated agreement. Restatement (Second) of Contracts § 209 (1979). The concession agreement in this case is an example of an integrated agreement. On its face it "reasonably appears to be a complete agreement." It contained an integration clause which states:

This License Agreement contains the entire understanding between the parties and there are no understandings, representations, or warranties not set forth or incorporated by reference in this document.

*See id.* § 209(3). The parties made minor changes in the language of one of the exhibits incorporated into the agreement. All these facts indicate that the agreement constituted a final expression of one or more terms of the agreement.

Section 210 of the Restatement discusses the difference between completely and partially integrated agreements. The comment states in part that "wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties." Restatement (Second) of Contracts § 210, comment b (1979). Because Sideris claims the agreement was completely integrated and Clark claims it was only partially integrated, we must consider Clark's evidence.

Clark's evidence is that the State promised to obtain an appropriation and to spend the money on his concession. There was no evidence of negotiation or agreement on this issue as described in the Restatement but only of a promise. *See* Restatement (Second) of Contracts § 214 (1979). However, nothing in the Restatement allows introduction of a prior oral *promise* when there is a written agreement. The language is couched in terms of "agreed term" and "agreements" or "negotiations." Clark's evidence lacks any indication of negotiation and agreement between himself and the State. Under the Restatement there is no provision for allowing evidence of a promised expenditure for the purpose of proving an additional obligation when the parties have entered an integrated agreement.

### III.

We turn now to the question of damages. The trial court made the following findings:

24. That as a direct and proximate result of the breaches by the Defendants

and the State of their obligations, promises and commitments as aforesaid to the Plaintiffs, including the breach of the concession agreement and breach of the various warranties and covenants set forth above, and the material misrepresentations made by the Defendants and the State to the Plaintiffs, the Plaintiffs have suffered the following damages:

A. $16,000.00 in damages to the cabins, contents of the cabins, furniture, fixtures, equipment and miscellaneous personal property;

B. $19,000.00 for damages to the lodge and contents;

C. Lost income and profits in the amount of $90,000.00;

D. $34,000.00 in lost interest and general damages.

As we have discussed, the State did give an express warranty to repair and maintain the property and improvements let to Clark. This warranty was subject to the availability of appropriations as well as to the discretion of the Commission. Any liability of the State to Clark must be based on this warranty.

### A.

■ The damage to Clark's personal property during the repair of the cabins is a proper item of damage. The State asserts that the valuation of the damage was excessive, yet it provides no specific valuation that is more accurate. We find substantial evidence in the record to support the award of $16,000 for this item of damages.

### B.

■ The trial court awarded Clark $19,000 for damages to the lodge. Apparently this amount represents the expense incurred by Clark in remodeling and repairing the lodge with the State's permission. There is no contract provision requiring the State to reimburse Clark for remodeling.

When asked if he expected to be reimbursed for his expenses, Clark testified as follows:

A. I did. I figured it was no reason why they wouldn't, since it was bringing it up to code and improving it. I was not promised it. I didn't say that, but I did expect.

Q. No one promised that if you made repairs you would be reimbursed for them? Not repairs, the improvements.

A. The remodeling, no, sir, but I was dealing with fair people in a fair way.

\* \* \* \* \* \*

Q. Do you know of any provision in that contract that requires the State to reimburse you for remodeling that you undertake on your own behalf?

A. No.

It is impossible to tell from the court's findings how much, if any, of the award was for the cost of repairs to make the lodge usable for the specific purpose warranted, how much was for the cost of remodeling, and how much was for complying with the cost of satisfying the building code after remodeling. We hold that Clark is entitled to recover the cost of repairs that the State had warranted it would make. However, he may not recover the costs of remodeling and the consequential costs of complying with the building code. The State never warranted that it would remodel the lodge, and Clark admitted the State was not obligated to reimburse him for doing so.

Accordingly, we remand for further findings and conclusions as to this element of damages consistent with this opinion.

### C.

■ The trial court awarded Clark $90,000 for lost income and profits. Again, it is impossible to tell how this amount was derived and what it represents. It apparently represents income lost from having certain cabins unsuitable for rental and from the State's failure to supply a new marina facility. Clark admitted that the State was not obligated under the agreement to provide a new marina. Clark also admitted that the State had increased the capacity of the marina beyond what existed when the contract was entered.

By the terms of the agreement, the Commission had authority to remove any or all of the cabins, or the entire boat dock. However, it did not remove any cabins or the marina. There is evidence that the facilities provided were not kept in a repaired condition. Clark was entitled under the express warranty to have facilities in good repair. Therefore, Clark may have suffered damages due to breach of the express warranty to repair the actual property. To the ·extent the State's failure to repair and maintain the cabins and the dock caused Clark to lose profits, he may recover. Of course, the State's duty was limited to expenditure of the available $300,000 appropriation. We remand for specific findings and conclusions on this point.

The State asserts that the court erroneously awarded Clark gross profits instead of net profits. Because we are remanding for more specific findings, we need not decide that question at this time.

### D.

■ The court also awarded Clark $34,000 in lost interest and general damages. No evidence supports the award of general damages. The award of lost interest relates to the cost of the funds Clark invested in the concession, including money for buying food and supplies. Clark admitted that the agreement did not require the State to reimburse him for these expenses. Clark gives no rationale to justify this award, other than that the interest was actually foregone. We can conceive of no rationale. Therefore, we hold that the court erred in awarding this item of damages.

### IV.

■ Clark brought a cross-appeal seeking the difference between the $300,000 appropriated and the $156,000 spent on his concession. The assertion that the State should be liable for this amount is untenable. The appropriation was made for Elephant Butte Lake Park, 1977 N.M.Laws, ch. 91, § 1, subd. B(5)(k), not for Clark or his specific concession. All of the appropriated funds were spent at that park, as determined by the Commission.

### V.

Accordingly, the judgment is reversed in part and affirmed in part, and remanded for more specific fact findings based on the record and consistent with this opinion.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.

SOSA, Senior Justice, dissenting.

I hereby respectfully dissent from this opinion. I feel that we are substituting our judgment for that of the trier of fact.