668 P.2d 1093

UNITED STATES BREWERS ASSOCIA-
TION, INC., Adolph Coors Company,
Stroh Brewery Company, F & M Schae-
fer Brewing Company, Anheuser-Busch,
Inc., Miller Brewing Company, Olympia
Brewing Company, G. Heileman Brew-
ing Company and Pabst Brewing Com-
pany, Plaintiffs-Appellants,

and

The Guinnes-Harp Corporation,
Plaintiff-in-Intervention-Appellant,

v.

DIRECTOR OF THE NEW MEXICO DE-
PARTMENT OF ALCOHOLIC BEVER-
AGE CONTROL, Defendant-Appellee.

No. 13053.

Supreme Court of New Mexico.

July 21, 1983.

Rehearing Denied Aug. 25, 1983.

Rodey, Dickason, Sloan, Akin & Robb, William S. Dixon, Freedman, Boyd & Daniels, Charles W. Daniels, Albuquerque, for plaintiffs-appellants.

Paul Bardacke, Atty. Gen., Arthur J. Waskey, Asst. Atty. Gen., Santa Fe, Lawrence A. Barela, Special Counsel to the Dept. of Alcoholic Beverage Control, Albuquerque, for defendant-appellee.

### OPINION

RIORDAN, Justice.

United States Brewers Association, Inc., Adolph Coors Company, Joseph Schlitz Brewing Company, Anheuser-Busch, Inc., Miller Brewing Company, Olympia Brewing Company, G. Heileman Brewing Company and Pabst Brewing Company (Brewers) filed a declaratory action against the Director of the New Mexico Department of Alcoholic Beverage Control (Director), in which Guinness-Harp Corporation intervened, challenging the constitutionality of the 1979 amendment to the Discrimination in Selling Act, NMSA 1978, Sections 60–12–1 through 60–12–10 (Act).[1] Upon motion, the trial court granted Brewers a preliminary injunction against the enforcement of the Act on the condition that they execute bonds, binding themselves to pay the difference between the prices at which the products were sold during the pendency of the injunction and the prices at which the Act would have required them to be sold under the Act. Director filed a motion for summary judgment which was opposed by Brewers, who filed counter-affidavits to the motion. Director's motion for summary judgment was granted. Brewers appeal. We affirm and remand.

The issues on appeal are:

I. Whether the 1979 amendment to the Act was unconstitutional for failure to properly contain the subject of the 1979 amendment in the title of the Act.

II. Whether the Act imposes an undue burden on interstate commerce.

III. Whether the Act requires price-fixing that is unlawful under federal antitrust laws.

IV. Whether the Act is in violation of the police powers of New Mexico.

### FACTS

The Act was originally passed in 1967 and applied to the sale of "alcoholic liquor" as defined in the Liquor Control Act, which excluded brewed products. The prohibition under the Act was that no brand of "alcoholic liquor" could be sold by manufacturers to New Mexico liquor wholesalers (Wholesalers) at any price higher than the price sold to any other liquor wholesaler any-

---

1. The Act has since been repealed, amended, re-codified and is included in the Liquor Control Act, NMSA 1978, Sections 7–9–80.1, 7–17–5, 7–24–1, 60–3A–1 through 60–3A–5, 60–4B–1 through 60–4B–8, 60–4C–1 through 60–4C–3, 60–5A–1, 60–5A–2, 60–6A–1 through 60–6A– 20, 60–6B–1 through 60–6B–18, 60–6C–1 through 60–6C–9, 60–7A–1 through 60–7A–25, 60–7B–1 through 60–7B–11, 60–8A–1 through 60–8A–19 (Repl.Pamp.1981 and Cum.Supp. 1982). The Act has become known as the "price affirmation law."

where in the United States or District of Columbia.

During the 1979 legislative session, House Bill 278 was enacted as 1979 N.M. Laws, ch. 83, and specifically read:

AN ACT RELATING TO ALCOHOLIC LIQUORS; AMENDING THE DISCRIMINATION IN SELLING ACT.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF NEW MEXICO:

Section 1. Section 60–12–2 NMSA 1978 (being Laws 1967, Chapter 269, Section 2) is amended to read:

"60–12–2. FILING OF SCHEDULES REQUIRED.—No brand of alcoholic liquor shall be sold to or purchased by a wholesaler, irrespective of the place of sale or delivery, unless a schedule is filed with the director of the department of alcoholic beverage control and is then in effect. For the purposes of the Discrimination in Selling Act, "alcoholic liquor" means alcoholic liquor as defined in Section 60–3–1 NMSA 1978."

The effect of this amendment was to extend the price affirmation law to brewed products which had previously been excluded under the definition of "alcoholic liquor."

## I. SUBJECT OF THE AMENDMENT

Brewers claim that the purpose and effect of the amendatory language of House Bill 278 were concealed from the Legislature, the administration and those affected by the law. Therefore, Brewers argue that House Bill 278 failed to comply with the mandatory notice requirements of N.M. Const. art. 4, Sections 16 and 18. We disagree.

Section 16 provides in pertinent part:

The subject of every bill shall be clearly expressed in its title * * * but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void * * * *

Section 18 provides in pertinent part:

No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full * * * *

(a) *Legislative intent*

In an attempt to show legislative intent, Brewers introduced affidavits at trial from chairmen of legislative committees claiming that they did not know the effect of House Bill 278, and that if they would have known the effect of House Bill 278, then they would have held hearings. The propriety of admitting a legislator's testimony to determine legislative intent was addressed in *State v. Turley,* 96 N.M. 592, 633 P.2d 700 (Ct.App.1980), *rev'd,* 96 N.M. 579, 633 P.2d 687 (1981). The Court of Appeals' opinion held that "a legislator's testimony, either as committee member or legislative member, generally is not competent evidence as to the intent of the legislative body enacting a measure." *Id.* 96 N.M. at 597, 633 P.2d 705 (citations omitted). However, we then overruled the Court of Appeals' opinion and found that "there [was] insufficient evidence in the record upon which the Court of Appeals could predicate a general principle of law that a legislator's testimony is not competent evidence as to the intent of the legislative body enacting a measure. * * *" *Id.* at 581, 633 P.2d at 689.

We now agree with the statement by the Oklahoma Supreme Court in *Haynes v. Caporal,* 571 P.2d 430, 434 (Okl.1977) (citations omitted) (emphasis added), referred to by the Court of Appeals in *Turley,* that:

At trial, legislative intent * * * was sought to be established through the testimony of an individual senator and house member at the time of [the bill's] passage. *This court is not bound, and need not consider such evidence. Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote.*

Similarly, as addressed in Annot., 70 A.L.R. 5 (1931), in determining legislative intent it is proper to look to the legislative history of an act or contemporaneous statements of legislators while the legislation was in the process of enactment. Statements of legis-

lators, *after* the passage of the legislation, however, are generally not considered competent evidence to determine the intent of the legislative body enacting a measure. *See, e.g., County of Washington, Oregon v. Gunther,* 452 U.S. 161, 176 n. 16, 101 S.Ct. 2242, 2251 n. 16, 68 L.Ed.2d 751 (1981); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977); *see also* Annot. 56 L.Ed.2d 918 (1979).

◼ In New Mexico, legislative intent must be determined primarily by the *legislation itself. State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (Ct.App.1973); *Santa Fe Downs, Inc. v. Bureau of Revenue,* 85 N.M. 115, 509 P.2d 882 (Ct.App.1973). Therefore, we adopt the Court of Appeals' reasoning and holding in *Turley.* To the extent that our opinion in *Turley* may be construed as inconsistent with this holding, our opinion is expressly overruled.

### (b) *Constitutionality*

We have long held that the test of a statute's constitutional validity under Section 16 is whether the title fairly gives such reasonable notice of the subject matter of the statute itself as to prevent the mischief intended to be guarded against. *State v. Ingalls,* 18 N.M. 211, 135 P. 1177 (1913). The mischief, which is to be guarded against, is "hodge-podge or log-rolling legislation, surprise or fraud on the legislature, or not fairly apprising the people of the subjects of legislation so that they would have no opportunity to be heard on the subject." *Martinez v. Jaramillo,* 86 N.M. 506, 508, 525 P.2d 866, 868 (1974) (citations omitted). When applying this test on appeal, we will indulge every presumption in favor of the legislation's validity. *Id.* Furthermore, each case must be decided on its own facts and circumstances. *State v. Gomez,* 34 N.M. 250, 280 P. 251 (1929).

◼ As a result of previous rulings by this Court, the Legislature has made it a policy to insure that the title of an act is stated in broad terms. *See, e.g. Bureau of*

*Revenue v. Dale J. Bellamah Corp.,* 82 N.M. 13, 474 P.2d 499 (1970); *First Thrift and Loan Association v. State,* 62 N.M. 61, 304 P.2d 582 (1956). The title, however, need not set forth details of an enactment. *City of Albuquerque v. Garcia,* 84 N.M. 776, 508 P.2d 585 (1973). If the subject matter of the bill is reasonably germane to the title of the act, it is sufficient to be valid under Section 16. *In re Investigation No. 2 of the Governor's Organized Crime Prevention Commission,* 91 N.M. 516, 577 P.2d 414 (1978); *see also State ex rel. Salazar v. Humble Oil & Refining Co.,* 55 N.M. 395, 234 P.2d 339 (1951). Likewise, we have held that the fact that an act may amend certain provisions of other statutes by implication, does not in and of itself violate Section 18. *State ex rel. Taylor v. Mirabal,* 33 N.M. 553, 273 P. 928 (1928).

◼ In the present case, House Bill 278 was very simple. It consisted of two paragraphs on one page and made two changes to the Act. The first change was to substitute the name of the person with whom reports must be filed from the "chief of the liquor division" to the "director of the department of alcoholic beverage control." The second change was to alter the definition of "alcoholic liquor" from "Spirituous Liquor" to "alcoholic liquor" as defined in the Act. The effect of this change clearly was to make brewed products subject to the Act, just as other alcoholic beverages had been previously. Having reviewed House Bill 278, we determine that its title did not fail to give reasonable notice of the subject matter of the amendment. The title does not violate Section 16. Furthermore, we determine that the amendment's reference to the definitions in NMSA 1978, Section 60–3–1,[2] does not violate Section 18. We therefore hold that House Bill 278 was sufficient to meet our constitutional standards.

### II. UNDUE BURDEN ON INTERSTATE COMMERCE

◼ Brewers claim that the trial court erred in granting summary judgment against them because the application of the

---

**2.** Presently compiled as NMSA 1978, Section 60–3A–3 (Repl.Pamp.1981).

Act imposed an undue interference with interstate commerce in violation of Article 1, Section 8, Clause 3 of the United States Constitution. For example, Brewers assert that strong competition in various regions of the country will require them to cut prices to meet competition in those regions. To require them to cut prices across the country to meet regional competition would result in an unreasonable burden on interstate commerce. Brewers also claim that the Act, in effect, would require all brewers to adopt an FOB (free on board) pricing system and that they would not be allowed to charge a "delivered price." The Act would increase prices to wholesalers, retailers and consumers in transshipped states since it forbids price reduction based on increased freight. It also would prohibit the discounting of distressed beer which must be sold before the shelf life affects its quality. Therefore, Brewers argue that the effect of the law is extra-territorial and burdens interstate commerce between the transshipping and the transshipped states, and that the trial court improperly granted summary judgment on the issue of whether the Act imposes an unreasonable burden on interstate commerce. We disagree.

The Twenty-first Amendment to the United States Constitution grants each state broad regulatory power over liquor traffic within its borders. *United States v. Frankfort Distilleries, Inc.,* 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). Although the Twenty-first Amendment does not overrule the Constitution's Commerce Clause, "each must be considered in the light of the other, and in the context of the issues and interests at stake in any *concrete case.*" *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964) (emphasis added).

In granting summary judgment, the trial court followed the reasoning in the United States Supreme Court case of *Joseph E.*

*Seagram & Sons v. Hostetter, Chairman, New York State Liquor Authority,* 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966).[3] In *Seagram,* after reviewing constitutional arguments comparable to the constitutional challenges raised by Brewers, the Court rejected a facial attack upon Section 9 of New York's Alcoholic Beverage Control Law (New York's Section 9). A comparison of New York's Section 9 and the Act indicates an indistinguishable price affirmation setting. Both require wholesalers and retailers to file monthly price schedules with the respective state liquor authority accompanied by an affirmation that prices charged are no higher than the lowest price at which sales are made anywhere in the United States during the preceding month.

In considering a Commerce Clause attack, the Court held that under the Twenty-first Amendment this particular method of regulation was valid on its face and *not* an unconstitutional burden on interstate commerce since the enforcement of the price affirmation law was stayed throughout the litigation. Specifically on the Commerce Clause argument, the Court reiterated its previous position that " 'a State is totally unconfined by traditional Commerce Clause limitation when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' " *Seagram,* 384 U.S. at 42, 86 S.Ct. at 1259 (quoting *Idlewild,* 377 U.S. at 330, 84 S.Ct. at 1297 (1964)). The Court therefore determined that in relationship to the Commerce Clause, nothing in previous cases decided under Commerce Clause analysis would require a ruling that the New York's Section 9 was unconstitutional.

In the more recent case of *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S.Ct. 937, 946, 63 L.Ed.2d 233 (1980) (citation omitted) (emphasis added), the Court relied

---

**3.** New York's price affirmation law initially was upheld constitutionally by the New York Supreme Court, Albany County, 45 Misc.2d 956, 258 N.Y.S.2d 442 (1965); then affirmed by the New York Supreme Court, Appellate Division, Third Judicial Department, 23 A.D.2d 933, 259 N.Y.S.2d 644 (1965); and thereafter affirmed by the Court of Appeals of New York, 16 N.Y.2d 47, 262 N.Y.S.2d 75, 209 N.E.2d 701 (1965), before review was granted by the United States Supreme Court.

on the *Idlewild* concept of a "concrete case" and stated:

> The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system. Although States retain substantial discretion to establish other liquor regulations, those controls may be subject to the federal commerce power in appropriate situations. *The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'*

The present case is not a "concrete case" because the enforcement of the Act and House Bill 278 with respect to Brewers was enjoined throughout the litigation. Application of appropriate Commerce Clause analysis would be too speculative. While a statute that is constitutional on its face can be unconstitutional in its application, we find that in the present case the trial court properly granted summary judgment. Therefore, we agree with the trial court's reading of *Seagram* that on its face the Act does not impose an unreasonable burden on interstate commerce.

## III. ANTITRUST LAWS

 Brewers argue that the Act requires them to engage in price discrimination and to establish interstate price-fixing in violation of federal antitrust laws, specifically the Sherman Act, 15 U.S.C. Sections 1 through 7 (1976), and the Robinson-Patman Act, 15 U.S.C. Section 13 (1976). We disagree.

The United States Supreme Court in *Seagram* specifically found no concerted anticompetitive conduct required for violation of federal antitrust laws. The Court stated:

> The bare compilation, without more, of price information on sales to wholesalers and retailers to support the affirmations filed with the State Liquor Authority would not of itself violate the Sherman Act * * * * Section 9 imposes no irresistible economic pressure on the appellants to violate the Sherman Act in order to comply with the requirements of § 9. On the contrary, § 9 appears firmly anchored to the assumption that the Sherman Act will deter any attempts by the appellants to preserve their New York price level by conspiring to raise the prices at which liquor is sold elsewhere in the country.
>
> Although it is possible to envision circumstances under which price discriminations proscribed by the Robinson-Patman Act might be compelled by § 9, the existence of such potential conflicts is entirely *too speculative* in the present posture of this case * * * *

*Id.* 384 U.S. at 45–46, 86 S.Ct. at 1261 (citations omitted) (emphasis added).

More recently, the United States Supreme Court again reviewed whether an alcoholic beverage control law violated federal antitrust laws and relied heavily on the *Seagram* case as authority in deciding *Rice v. Norman Williams Co.*, 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). In *Rice*, the Court stated that:

> In determining whether the Sherman Act preempts a state statute, we apply principles similar to those which we employ in considering whether any state statute is preempted by a federal statute pursuant to the Supremacy Clause. As in the typical preemption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes. The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute. *A state regulatory scheme is not preempted by the federal antitrust laws simply because in a hypothetical situation a private party's compliance with the statute might cause him to violate the antitrust laws. A state statute is not preempted by the federal antitrust laws simply because the state scheme might have an anticompetitive effect* * * * *
>
> *A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy.*

*Id.* at 659, 102 S.Ct. at 3299, 73 L.Ed.2d at 1049–1050 (citations omitted) (emphasis added). The Court thereafter held that:

Our decisions in this area instruct us, therefore, that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. Such condemnation will follow under § 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a *per se* violation. If the activity addressed by the statute does not fall into that category, and therefore must be analyzed under the rule of reason, the statute cannot be condemned in the abstract. Analysis under the rule of reason requires an examination of the circumstances underlying a particular economic practice, and therefore does not lend itself to a conclusion that a statute is facially inconsistent with federal antitrust laws.

*Rice,* 458 U.S. at 661, 102 S.Ct. at 3300, 73 L.Ed.2d at 1051.

Inasmuch as no material distinction exists between New York's Section 9 and the Act, we determine that the holdings in *Seagram* and *Rice* are controlling and that it is unnecessary for us to engage in the hypotheticals presented by Brewers on this point. A statute dealing with the regulation of alcoholic beverages, such as the price affirmation law presented in this case, cannot be constitutionally condemned in the abstract. If legislation is not a *"per se* violation" of federal antitrust laws, we will not engage in constitutional analysis unless and until a "concrete case" is engendered from a specific application of the legislation. In other words, if legislation is constitutional on its face, then it will remain constitutional until such time as there is specific enforcement experience that will give us a body of historical facts upon which we can base a proper judgment, as opposed to an inappropriate decision based on hypotheticals, assumed facts or potential conflicts. *Rice v.* *Norman Williams, Co.; California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.; Joseph E. Seagram & Sons v. Hostetter, Chairman New York State Liquor Authority.*

## IV. STATE'S POLICE POWER

■ Brewers claim that the trial court erred in denying them an opportunity to prove that the statutory scheme of the Act had the effect of dictating price-fixing, without any substantial relation to the public health, safety or general welfare. Brewers therefore argue that the Act amounts to a preferential price-fixing scheme which is an improper exercise of New Mexico's police power in violation of N.M. Const. art. 2, Sections 4 and 18. We disagree.

Section 4 provides in pertinent part:

All persons * * * have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property * * * *

Section 18 provides in pertinent part:

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws * * * *

We have held that if the manufacture and sale of liquor is lawful, then statutes which provide for the regulation of the business are limited by constitutional guarantees and must fall within the proper exercise of New Mexico's police power. *Drink, Inc. v. Babcock,* 77 N.M. 277, 421 P.2d 798 (1966). In determining whether a statute amounts to a proper exercise of police power, courts must indulge every presumption in favor of the validity of the legislation. "[T]he state may adopt an economic policy reasonably deemed to promote the public welfare, and may enforce such a policy by appropriate legislation without contravening due process so long as such legislation has a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory." *Id.* at 280, 421 P.2d at 800 (citation omitted).

The legislation reviewed in *Drink, Inc.,* specifically delegated and permitted manufacturers the power to contractually fix the minimum price for their product at the retail level. In *Drink, Inc.,* we held that the fair-trade contract and markup provisions of the Liquor Control Act constituted unreasonable legislation, and was not an appropriate exercise of New Mexico's police power. In so holding, we stated that:

> We want to make it clear that the legislature has the power to act on the subject of below-cost sales and their effect on free competition, and may adopt legislation relating to the establishing of prices on alcoholic beverages with the view and purpose of regulating and controlling the liquor business in the interest of the public welfare. *We are here only concerned with the fair-trade contract and mandatory uniform markup provisions discussed. The police power was not validly exercised in the enactment of these specific provisions.*

*Id.* at 284, 421 P.2d at 803 (emphasis added).

In marked contrast, the Act does not permit Brewers to establish the minimum wholesale or retail prices of their beer through "non-signor" or "vertical agreements" provisions as was the case in *Drink, Inc.* Instead, the Act requires Brewers to sell their products to Wholesalers at a price "no higher than the lowest price at which such item of liquor was sold by the brand owner, or any related person, to any wholesaler anywhere in any other state of the United States or in the District of Columbia, or to any state or state agency which owns and operates retail liquor stores" during the immediate preceding calendar month. NMSA 1978, § 60–12–6.[4]

In reviewing a comparable constitutional argument, the United States Supreme Court in *Seagram* specifically rejected assertions that New York's Section 9 violated due process and equal protection clauses of the Fourteenth Amendment. The Court stated:

> We cannot say that the legislature acted unconstitutionally when it determined

that only by imposing the relatively drastic 'no higher than the lowest price' requirement of § 9 could the grip of the liquor distillers on New York liquor prices be loosened. (Footnote omitted.) In a variety of cases in areas no more sensitive than that of liquor control, this Court has upheld state maximum price legislation.

*Id.* 384 U.S. 1 at 48, 86 S.Ct. at 1262–1263 (citations omitted). By virtue of the Twenty-first Amendment, the states have been conferred with something more than a nominal degree of authority over public health, welfare and morals when they act to regulate the liquor business. In light of this authority, the Act is neither arbitrary nor discriminatory. Therefore, we hold that the Act does not violate the police powers of New Mexico.

CONCLUSION

We determine that the trial court did not err in deciding that no genuine issues of fact exist because the enactment of House Bill 278 satisfies constitutional requirements, and because the Act, as amended, is constitutionally valid on its face. The United States Supreme Court cases of *Rice, Midcal, Seagram* and *Idlewild* are controlling and dispositive of the specific constitutional challenges raised by Brewers. On remand, the trial court shall determine the Wholesalers' appropriate shares of the bonds posted by Brewers. Brewers, however, are not precluded from bringing a future action upon the showing that its case has become "concrete", henceforth from this determination.

The trial court's entry of summary judgment is affirmed. This case is remanded to the trial court for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

FEDERICI, J., and THOMAS A. DONNELLY, Judge, sitting by designation, concur.

---

4. Presently compiled as NMSA 1978, Section 60–8A–15 (Repl.Pamp.1981).