850 P.2d 1011

Ronald **WHITELY, Mary Utton, Robert Silva, Richard M. Padilla, Douglas D. Mitchell, Ysmael Gomez, Ray Garley, Ray Anaya, Jo Ann F. Salcido, Pete Padilla, Reynaldo Garcia, Arnold Martinez, Solema Olga Herrera, George DiRe, and Sharon Bowen, Plaintiffs–Appellants,**

v.

**NEW MEXICO STATE PERSONNEL BOARD, Defendant–Appellee.**

No. 20662.

Supreme Court of New Mexico.

April 1, 1993.

Freedman, Boyd, Daniels, Peters, Hollander, Guttmann & Goldberg, P.A., Joseph Goldberg, Dana E. Kanter, Albuquerque, for plaintiffs-appellants.

Tom Udall, Atty. Gen., Andrea Buzzard, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

**OPINION**

FROST, Justice.

This appeal requires us to determine whether plaintiffs-appellants juvenile probation officers and their staffs ("JPOs") who were recently transferred from the New Mexico judicial branch to the New Mexico executive branch pursuant to the Youth Authority Act, 1988 N.M.Laws, chapter 101, Section 47(C),[1] continue to ac-

1. Section 47, as a temporary provision of the Youth Authority Act, was never codified. The

crue annual vacation leave at judicial branch rates under the Act. Granting Defendant-appellee New Mexico State Personnel Board's ("Personnel Board") motions for summary judgment and dismissal, the district court held that the judicial branch rates of accrual for annual leave are not preserved by the Act's grandfather clause and that no unconstitutional impairment of contracts or diminution of compensation results. The district court also held that two documents containing statements of state legislators offered to prove legislative intent were inadmissible. We affirm the district court's decision in all respects.

The Personnel Board, an executive agency, administers the executive branch personnel system pursuant to the Personnel Act, NMSA 1978, §§ 10-9-1 to -25 (Repl.Pamp.1992). Based upon its interpretation of Section 47(C) of the Youth Authority Act ("Section 47(C)"), the Personnel Board decided that transferred JPOs should accrue annual leave from the time of their transfer at rates specified under the Personnel Act regulations for the executive branch. The JPOs disagree, contending that Section 47(C) entitles them to continue accruing annual leave at the more generous judicial branch rates. The Personnel Board concedes that transferred JPOs retain earned but unused annual leave under Section 47(C) and that the JPOs' years of service in the judicial branch will count as continuous service for the purpose of calculating their new rate of accrual of annual leave under the Personnel Act.

The JPOs' complaint alleged that the Personnel Board's acts violated Section 47(C), impaired their contracts in violation of Article II, Section 19 of the New Mexico Constitution, and diminished their compensation in violation of Article IV, Section 27 of the New Mexico Constitution. The district court granted the Personnel Board's motion for summary judgment regarding the Section 47(C) and contract clause claims, and it dismissed the illegal diminution of compensation claim for failure to state a claim upon which relief can be granted. The JPOs appeal this decision. They also contend that the district court improperly excluded from evidence two documents expressing legislative intent to preserve the judicial rates of accrual, a letter by State Representative Raymond Sanchez and an affidavit by Chief Juvenile Probation Officer Mary Utton.

### I. *Statutory Interpretation*

■ The Youth Authority Act transferred juvenile probation officers and personnel from the judicial branch of state government to a newly created agency within the executive branch of state government called the Youth Authority. Youth Authority Act, 1988 N.M.Laws, ch. 101, § 8 (codified at NMSA 1978, § 9-2A-5 (Supp.1992)). Section 47 of the Act specifically requires that transferred employees retain their classification, salary, and other "accrued benefits" enjoyed during their tenure as part of the judicial branch. The Act does not expressly define "accrued benefits," and the main issue on appeal is whether or not the rate of accrual of annual leave is a retained "accrued benefit." Section 47(C) of the Youth Authority Act states:

C. At the time of transfer, the juvenile probation officers, support staff and chiefs shall retain their current classification and salary. Benefits including but not limited to annual leave, sick leave, pension and insurance benefits shall be established in accordance with the Personnel Act, provided no accrued benefits shall be forfeited. Those juvenile probation officers and chiefs employed after July 1, 1988 shall be subject to a classification and compensation plan

Act was originally codified at NMSA 1978, 9-20-1 to -18, but was repealed by 1992 N.M.Laws, chapter 57, Section 56. Comparable provisions are now codified in the Children, Youth and

Families Department Act, NMSA 1978, §§ 9-2A-1 to -16 (Supp.1992). The JPOs remain administratively attached to the Children, Youth and

that will be established in accordance with the Personnel Act.[2]

Youth Authority Act, 1988 N.M.Laws, ch. 101, § 47(C).

 In addressing issues of statutory interpretation, we must determine and effectuate the intent of the legislature, *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988), using the plain language of the statute as the primary indicator of legislative intent, *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary. *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990). No part of a statute should be construed so that it is rendered surplusage. *T.W.I.W., Inc. v. Rhudy,* 96 N.M. 354, 357, 630 P.2d 753, 756 (1981).

Contrary to the JPOs' contentions, the rate of accrual of annual leave is not an "accrued benefit" under the plain meaning and structure of Section 47(C), which clearly requires transferred JPOs to accrue annual leave at Personnel Act rates from the time of transfer to the executive branch. We agree with the trial court that "accrued" ordinarily and particularly in the context of the second sentence of Section 47(C) means accumulated, and that the term "accrued benefits" relates to benefits that were earned but unused at the effective date of transfer. This interpretation employs the ordinary meaning of the statute's terms, and it gives effect to Section 47(C) in its entirety. Adopting the JPOs' contention that "accrued benefits" include rates of accrual would effectively nullify the mandate that "[b]enefits including but not limited to annual leave ... shall be established in accordance with the Personnel Act," because this phrase is rendered meaningless surplusage if it does not refer to rates of accrual. *See T.W.I.W.,* 96 N.M. at 357, 630 P.2d at 756. Our interpretation

effectuates the intent of this legislation as primarily evidenced in its clear terms, and it does not cause accrued benefits to be forfeited in violation of Section 47(C). The transferred JPOs retain "accrued benefits" because their earned but unused annual leave will transfer with them to the executive branch, and their years of service in the judicial branch will count as continuous service for the purpose of calculating their new rate of accrual of annual leave under the Personnel Act.

 To support their contention that the rate of accrual of annual leave is an "accrued benefit," the JPOs cite several public and private pension cases from other jurisdictions which state that pension plan interest rates or other terms are "accrued benefits" under various statutes, regulations, and pension agreements. *See, e.g., Hauck v. Eschbacher,* 665 F.2d 843 (8th Cir.1981); *Shaw v. International Ass'n of Machinists & Aerospace Workers Pension Plan,* 563 F.Supp. 653 (D.C.Cal.1983), *aff'd,* 750 F.2d 1458 (9th Cir.), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Flisock v. State, Div. of Retirement and Benefits,* 818 P.2d 640 (Alaska 1991). While these pension cases might establish that sometimes a rate or formula may be considered "accrued," they do not convince us that our legislature meant "accrued benefits" to encompass the rate of accrual of annual leave in Section 47(C). Clear statutory language is more probative of legislative intent than authority from other jurisdictions defining an isolated term in different contexts. *See General Motors,* 103 N.M. at 76, 703 P.2d at 173. The district court's dismissal of the JPOs' claim alleging violation of Section 47(C) is affirmed.

## II. *Constitutional Challenges*

 The JPOs contend that interpreting Section 47(C) of the Youth Authority Act to change their rate of accrual of annual leave to conform with Personnel Act regulations

Families Department pursuant to Section 9–2A–5.

**2.** The parties concede that the reference to "July 1, 1988" in Section 47(C) is a typographical

error which should have read "July 1, 1989," the effective date of the Act. *See* N.M.Laws, ch. 101 § 52.

infringes their state constitutional rights in two respects. They argue that their contract rights embodied in Section 47(C) and created by their previous status as judicial branch personnel are unconstitutionally impaired in violation of New Mexico Constitution Article II, Section 19,[3] and that their compensation as public officers is unconstitutionally diminished in violation of New Mexico Constitution Article IV, Section 27.[4]

■ A prerequisite to a finding that a contract obligation is unconstitutionally impaired is proof of the existence of a contract, the benefits of which are somehow denied to the claimant due to the effect of legislation or other governmental action. *See Grant v. Nellius*, 377 A.2d 354, 356 (Del.1977). The clear defect in the JPOs' contract clause claim is that they are unable to prove the existence of a contract entitling them to retain the judicial branch rates of annual leave accrual.

■ It is well established that statutes fixing the compensation or terms of public employment are presumed merely to establish public policy subject to legislative revision, and not to create contractual or vested rights. *Dodge v. Board of Educ.*, 302 U.S. 74, 78–79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). Contractual rights are not created by statute unless "the language of the statute and the circumstances ... manifest a legislative intent to create private rights of a contractual nature enforceable against the State." *Wage Appeal v. Board of Personnel Appeals*, 208 Mont. 33, 676 P.2d 194, 199 (1984). This Court has said that holding constitutionally created public office generally does not confer vested or contractual rights, *Morris v. Gonzales*, 91 N.M. 495, 497, 576 P.2d 755, 757 (1978), and it follows that public employees do not generally have vested or contractual rights to specific rates of compensation, *see Ham-*

*mond v. Temporary Compensation Review Bd.*, 473 A.2d 1267, 1272 (Me.1984).

As discussed above, Section 47(C) does not confer the right, contractual or otherwise, to retain the judicial branch rates of annual leave accrual. Also, neglecting to cite statutes, regulations, or other evidence demonstrating intent to create employment contracts, the JPOs fail to adequately explain how their position in the judicial branch conferred rights of a contractual nature. The applicable statute delegating authority to the judiciary to appoint, classify, and compensate JPOs before their transfer to the executive branch, NMSA 1978, Section 32-1-7 (Repl.Pamp.1986), does not contain language imparting contractual rights. The JPOs therefore fail to overcome the presumption that they did not have vested or contractual rights in their employment benefits. *See Dodge*, 302 U.S. at 78–79, 58 S.Ct. at 100. The New Mexico cases cited to support the contract claims are easily distinguishable by the fact that the claimants in those cases had completed performance under demonstrated contracts before an act of the state impaired vested contractual rights. *See, e.g., Rubalcava v. Garst*, 53 N.M. 295, 297, 206 P.2d 1154, 1155–56 (1949) (holding that legislation requiring that contracts to make bequests must be written to be enforceable unconstitutionally impaired vested rights in an oral contract to make a bequest which was fully performed and otherwise enforceable before the effective date of the legislation); *Hayner v. Board of Comm'rs*, 29 N.M. 311, 313, 222 P. 657, 658 (1924) (holding that legislation revoking a statute entitling citizens to a bounty for killing certain wild animals unconstitutionally impaired vested rights to the bounty of hunters who killed wild animals before the effective date of the revocation).

Other jurisdictions addressing similar questions of vested rights in public employ-

3. Article II, Section 19 of the New Mexico Constitution states: "No ex post facto law, bill of attainder nor law impairing the obligation of contracts shall be enacted by the legislature."

4. Article IV, Section 27 of the New Mexico Constitution states:

No law shall be enacted giving any extra compensation to any public officer, servant, agent or contractor after services are rendered or contract made; nor shall the compensation of any officer be increased or diminished during his term of office, except as otherwise provided in this constitution.

ment have also rejected arguments that prospective reductions of employment benefits unconstitutionally impair contract obligations. *See, e.g., Anderson v. City of Northlake,* 500 F.Supp. 863, 866 (N.D.Ill. 1980) (holding statutes in question did not evidence legislative intent to create binding contract), *aff'd,* 657 F.2d 272 (7th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981); *Washington Fed'n of State Employees v. State,* 101 Wash.2d 536, 682 P.2d 869, 872 (Wash.1984) (holding terms and conditions of public employment are basically controlled by statute rather than contract); *Grant v. Nellius,* 377 A.2d 354, 358 (Del.1977) (holding statute that altered future, unvested benefits of state employees may be altered by the legislature without violating contract clause).

■ The JPOs' constitutional challenge based on Article IV, Section 27 also lacks merit. In *State ex rel. Gilbert v. Board of Comm'rs,* 29 N.M. 209, 214, 222 P. 654, 655 (1924), we held that the constitutional prohibition against diminishing an officer's compensation during his term in office does not apply to public employees who do not hold "terms of office." This precludes application of the provision to public employees such as the JPOs who are not hired for a definite term nor particular period of time, but who are removable, consistent with applicable personnel rules, at the discretion of the appointing authority. *Id.* Because *Gilbert* is dispositive, we affirm the district court's dismissal of appellants' unlawful diminution of compensation claim.

### III. *Evidentiary Issues*

■ The JPOs contend that two documents supporting their interpretation of Section 47(C) were improperly denied admission into evidence by the district court. The first document is an April 27, 1989 letter from New Mexico Representative Raymond Sanchez to Natalie Babcock, Director of the State Personnel Office. The letter advises Babcock that "[a]ll District Court employees who supported the Youth Authority bill were told by the sponsoring legislators that they would not lose any benefits in the transfer, especially those

benefits relating to rates of accrual of annual leave." The letter further requests that Babcock effectuate this legislative intent and abandon her plan to lower accrual rates for transferring JPOs.

The second document at issue is a May 1990 affidavit of Mary Utton, a chief JPO. In the affidavit, Utton states that before the enactment of the Youth Authority Act, JPOs understood and "were assured by persons sponsoring the legislation that all of the employee benefits which they enjoyed under the judicial branch personnel rules would be preserved ... including rates of accrual for annual leave." The district court held that both documents were inadmissible because they recited incompetent evidence and were hearsay not meeting exceptions to the hearsay rule.

We have held that "[s]tatements of legislators, *after* the passage of legislation ... are generally not considered competent evidence to determine the intent of the legislative body enacting a measure." *United States Brewers Assoc., Inc. v. Director of the New Mexico Dep't of Alcoholic Beverage Control,* 100 N.M. 216, 218–19, 668 P.2d 1093, 1095–96 (1983), *appeal dismissed,* 465 U.S. 1093, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984). This rule is derived from the principle that the legislature speaks with a single voice through the concerted action of enacting legislation. *See id.* at 218, 668 P.2d at 1095 (quoting *Haynes v. Caporal,* 571 P.2d 430, 434 (Okla.1977)). The views of individual legislators are not controlling in judicial interpretation of statutes under the circumstances present here because the sovereign authority of the legislature is instilled in the representative body, not its individual members.

Representative Sanchez's letter, written after enactment of the Youth Authority Act, is clearly inadmissible evidence of legislative intent. The JPOs' argument that the letter is admissible because Representative Sanchez's statements were made contemporaneously with the passage of the Act is factually incorrect since the Act was passed in March 1988 and Sanchez's letter was written in April 1989. The fact that

**314**

Sanchez's statement was made before the effective date of the Act is immaterial. *See Brewers*, 100 N.M. at 218–19, 668 P.2d at 1095–96.

The trial court found that the Utton affidavit, because it purported to relate assurances to and understandings of persons other than the affiant, was not based on personal knowledge and was, therefore, not properly admissible. *See* SCRA 1986, 11–602; SCRA 1986, 11–802. Reviewing the trial court's determination of inadmissibility under the abuse of discretion standard, *State v. Bell*, 90 N.M. 134, 139, 560 P.2d 925, 930 (1977), we find that the two documents were properly excluded from evidence.

For the foregoing reasons, the district court's grant of summary judgment and dismissal of claims is AFFIRMED.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI, J.